Ruffin, C. J.
 

 This Court is of opinion, that neither of the three first objections, taken for the prisoner on his ■trial, entitles him to a
 
 venire de novo.
 

 That to the evidence of the witness Hall, is entirely groundless. It would seem to be sufficient, if a witness, who is called to prove what another said or deposed to ■on a former occasion, swears that he is able
 
 to
 
 state all that was said on the subject of controversy, at the time to which his testimony refers. At all events we hold it ■sufficient to admit a witness, who says, that he can state all that passed on the occasion when that conversation occurred, whether relative'to the controversy or any other ¡subject. Such was the state of the facts in this case. The declarations of the prisoner at
 
 another time,
 
 or his ■conversations with Price or another person upon a different occasion, were not admissible evidence, whether .proved by this or any other witness. Besides, the exception does not set out the testimony given by Hall; and, for ought that we can tell, the declarations proved by him ■may have been irrelevant, and, so, harmless; or they jmay have been beneficial to the-prisoncr. It is ncccs-
 
 *243
 
 sary, that the appellant should show in his exception some error to his prejudice, otherwise'this Court cannot undertake to set aside the solemn verdict of the jury.
 

 We do not see the least ground for saying, that the prisoner’s confessions were obtained by any undue means —either threats, or promises, or any other improper influence ; but they appear, as far as we are at liberty, or can judge, to have been “free and voluntary,” as the expression of the books is. It is impossible to hold, that the. mere presence of a gentleman, holding the respectable station of Vice Consul under a foreign Government, could place the prisoner, while under examination before a Magistrate of this Country, under any inducement, but that of his own will, to make a confession; or that putting a question to him by that gentleman, the nature of which, if put, the witnesses could not state, could have any such effect: and that, the more especially, when the Magistrate, according to his duty and the dictates of humanity, not only once, but twice cautioned the prisoner against making a confession and informed him that, if he did, it might be used against him. It was contended in the argument, however, that the confession was extorted by a threat of the Magistrate himself, in saying to the prisoner, “that unless he could account for the manner in which he became possessed of Rodney’s watch, he should be obliged to commit him, to be tried for stealing it.” This was treated as a demand.on the prisoner, that
 
 he should tell
 
 how he came by the watch, under the penalty of imprisonment. But that is doing great violence to the language and purpose of the examining Magistrate. The prisoner was not asked
 
 to tell
 
 any thing about the matter ; but he was required to
 
 account
 
 for his having the watch, that is, to account for it by proof, and not by any declaration of his own, in order, as the Magistrate humanely informed him, he might thereby repel the legal presumption, that he came dishonestly by the article, of •which the owner, it appeared, had been robbed the night
 
 *244
 
 before. So far from that communication being capable of being regarded as a threat, it was really sound legal advice, calculated to put the prisoner upon a proper de-fence, if he could establish his case by proof. And that such was the purpose of the remark is obvious from two considerations. The one is, that no statement of the prisoner, merely, could have been sought by the Justice, as
 
 that
 
 could not satisfactorily “ account” for the prisoner’s possession of the watch, so as to authorize his discharge. And the other is, that the Magistrate perceived, that the prisoner, notwithstanding his previous caution, was as he thought, about to state, how he got the watch, and immediately, in order to correct any possible misapprehension of the prisoner and to apprize him of the consequence, cautioned him again not to make any confession. More could not have been done to put the prisoner upon his guard and instruct him as to his rights. But he persisted in the resolution to confess, declaring that he would tell all he knew about the matter ; and he went on, accordingly, to admit his perpetration of the robbery. It would seem, that if any confession is to be deemed voluntary, .and to flow from a sense of the obligation of truth, this must.
 

 We likewise hold, that his Honor directed the jury correctly as to the effect they might allow to the prisoner’s confessions. There was, indeed, evidence in corroboration of the confession, namely, the injuries inflicted on Rodney, which added "greatly to the credit, to which the confessions, in themselves, might be entitled. But we believe, that it is now held by Courts of great authority, that an explioit and full confession of a felony, duly made by a prisoner, upon examination on a charge before a Magistrate, is sufficient to ground a conviction, though there be no other proof of the offence having been committed. We are aware that speculative writers do not agree in opinion entirely upon the respect due to evidence of this character. This is much like the diversity of opinion among legal essayists, upon the sufficiency of the
 
 *245
 
 unsupported testimony of an accomplice to justify a conviction. Notwithstanding the doubts thrown upon the point in that manner, persons, having the responsibility of the judicial station, were obliged, when once the evidence was held admissible, to leave its sufficiency, according to the
 
 evidence
 
 actually yielded to it, to the jury, whose province it is to say, what the fact is. There are many cases to the effect, that there may be a conviction upon it alone. 1
 
 Leach. Or. C.
 
 464, 478.
 
 State
 
 v.
 
 Haney, 2
 
 Dev. and Bat. 390.
 
 State
 
 v.
 
 Weir,
 
 1 Dev. 363. So upon the question in this case, Chief Baron GxlbeRT, for example, deems a confession evidence of
 
 the
 
 highest and most satisfactory kind,
 
 Gibb. Ev.
 
 123 ; while Mr. Blackstone, 4
 
 Com.
 
 357, expresses quite a contrary opinion, that it is the weakest and most .suspicious of alt evidence. We might be at some loss in selecting, between vtwo such eminent authors, a guide on this question. But we are relieved from that necessity by judicial decisions, which seem to have settled the question, and therefore may be safely adopted. In
 
 Eldredge’s
 
 case, Russ, and Ry. Cr. Cases 440, the presiding Judge told the jury, that, independent of the prisoner’s confession, there was, in his opinion, no evidence of a felony, and he left the case to
 
 them on the
 
 confession alone; and all
 
 the
 
 Judges held a conviction on that evidence right. The case of
 
 Rex
 
 v.
 
 FalJmer
 
 &
 
 Bond,
 
 Id. 481, was similar, and with the same result.
 
 Rex
 
 v.
 
 White
 
 &
 
 Langdor,
 
 Russ. & Ry. 507, is to the same effect; and in the next case, that of
 
 Rex
 
 v.
 
 Tippet
 
 all the Judges thought the conviction right, as there was some evidence, besides the confessions, which made it probable that the felony had been committed, and a majority of the Judges held, that, without the other evidence, the prisoner’s confession was evidence, upon which the jury might convict. These recent'decisions, to say nothing of the earlier ones in
 
 Wheeling’s case,
 
 1 Leach
 
 311,
 
 and in
 
 Lambe’s case, 2
 
 Leach 554, fully bear out his Honor in the instructions he gave upon this trial.
 

 
 *246
 
 It is not sufficient to impugn the principle established by them, that there have been instances, in which men have charged themselves with offences, which they did not commit, or which had never been perpetrated. For that argument would destroy all confidence in evidence, circumstantial or direct; since, by each, human tribunals have been or may be misled. But the administration of justice cannot depend upon such nice possibilities. It may safely, and, indeed, must necessarily, proceed upon the common experience of men’s motives of action and of the tests of truth. Now few things happen seldomer, than that one, in the possession of, his understanding, should of his own accord make a confession against himself, which is not true. Innocence or weakness is therefore sufficiently guarded by the rule, which excludes a confession unduly obtained by hope or fear. Hence, if one pleads guilty, there-must be judgment against him. So, after a plea of not guilty, if the accused will make to the jury a plain and open declaration of his guilt, including all the facts, which go to make up the offence legally, the Court can do no less than tell the jury, they may act on such a declaration, and that it renders other evidence unnecessary. Of the same grade of evidence, precisely, is a confession out of Court, provided only it be fully proved and appear to have flowed from the prisoner’s own unbiassed will. • Such a confession, which goes to the. whole case, is plenary evidence to the jury.
 

 His Honor next instructed the jury, that whether the robbery was committed in the street of Wilmington or on the wharf described in the exception, it was a highway robbery. In that position, the Court is of opinion, there was error. It is trae, there was evidence, on which the jury might well be supposed to have found the robbery was in the street, and, if they had said so, this difficulty would have been removed. But as they did not state, where they believed the act to have been done, we must, under the instructions, assume it to have been on the'
 
 *247
 
 wharf. The description of the wharf and the relative positions of it and the street do not appear very explicitly in the case. It is possible, the wharf may form part of the street, at its termination ; for example, as some are made for ferry landings. But we cannot assume it to be so, especially as the presiding Judge distinguished between the street and the wharf, as being different places. The most we can presume is, that the public freely and rightfully used it; as it is stated that, although there were, near it, other wharfs, that were private property, this was not enclosed and was used by the public, and no private right in it is suggested. But, supposing it to be a public wharf, or a county wharf, as it is said such wharfs are sometimes called, the doubt arises, whether it be a public highway; for, if it be not, this indictment is not sustained. The statute takes away clergy from the offence of “ robbing any person in of near any public highway and as this indictment has but one count and. that charges the robbery
 
 in
 
 the highway, and it is found to have been on the wharf, the evidence does not support the allegation, unless it be true that the wharf is a highway. We speak thus, althoug'h the wharf is taken to abut on the street, and the latter is undoubtedly a highway in the strictest sense; so that a robbery
 
 on
 
 the wharf would be within the statute, as being done “near” the highway. But as the place in this ease is material, it is necessary, we think, to state it truly, in the words of the act, either as being
 
 in
 
 or
 
 near
 
 the highway, so as to facilitate a defence upon
 
 auterfois acquit
 
 or
 
 convict,
 

 It is true that Lord Hale, 1
 
 Pl. C.
 
 535, says, that an indictment of a robbery
 
 in vel prope altam viam regionem,
 
 though in the disjunctive, was usual at Newgate, though an indictment ought to be certain ; and it is to be inferred from the whole passage, that proof that it was committed either in the highway or near to it would support the indictment, and enable the jury to find it, so as to oust clergy. But Lord Haj.r does not mean to lay it down*,
 
 *248
 
 that it is a necessary form of the indictment, that it should ' in every case state the robbery to be “ in
 
 or
 
 near the highway,” but only that it wTas admissible and usual; and that when so laid, it would be sustained by evidence of a robbery at either place. It is clear from the precedents, that they often laid the offence to be
 
 in the
 
 highway, by itself, and often laid it to be near'the highway, according, probably, to the facts ; and it is probable that it was frequent to have two counts, the one laying it », .and the other
 
 near,
 
 the highway. We own, that were it not for the great'authority of Lord IIalb, we should have thought one count in the disjunctive bad. But although indictments for robbing in
 
 or
 
 near the highway were tolerated, and under such an one the proof might be of the one or the other, yet fairness to the prisoner and ail legal analogy require, that, when the offence is laid positively to have been committed in
 
 one of those
 
 ways, it ought to be proved as laid, and not in the other mode. As we conceive, therefore, this indictment would not be sustained by evidence, that the place of the robbery was not
 
 in,
 
 but
 
 near
 
 the highway. The members of
 
 the
 
 Court are not familiar with such subjects, and, perhaps, may err from not knowing, how persons engaged in commerce regard those places, and to what actual uses they are directed or can rightfully be applied.
 
 A highway
 
 is well understood in the law. It is said in England, that there are three kinds ; but they all agree in this, that they are common to all persons to pass and repass at pleasure. We know of but one kind here, as yet; namely, public roads or streets, over which all citizens may go at will on foot, or horse back, or in carts or carriages. They are thorough-fares, over which people travel from one part of the Country to another. But a public wharf does not seem in its nature to be a highway,, in any sense in which we have found either word used. A wharf is sometimes made on the land at the water’s edge, and is sometimes built in the water to the channel of a river or
 
 *249
 
 other part, and is a space, as we take it, for the deposit of goods, in order conveniently to lade and unlade vessels. To those ends drays, carts, and other vehicles of burden go on them to carry or take away merchandize, and the merchants go also, either on foot or otherwise according to their health or convenience, to look to their property and conduct their business. A. public wharf is, for those purposes, no doubt, open to all persons. The public have an interest in it, so that it is not
 
 prioati juris
 
 only ; and in that sense
 
 “
 
 it is
 
 like
 
 a public street” as was said in
 
 Bolt
 
 v.
 
 Stennett,
 
 8 T. R. 608. But it does not follow, that it is a
 
 'highway,
 
 any more than a Court House or a Church is, because the former is open to all persons to witness the administration of justice, and the latter to worship in. The public use of a wharf is not to pass from place to place over it, but it is merely for" the convenience of commerce abroad, that is carried on in ships. With these views of the question, we must.hold, that a public wharf, merely as such and not being part of a street, is not a highway ; and, consequently, that the prisoner was improperly convicted.
 

 As the case will, probably, be tried again, it is proper to notice an objection taken, on the argument here, to the' indictment. It charges a felonious assault in the county of New Hanover on the 29th of March, 1847,
 
 “
 
 in the common and public highway of the State, in and upon one J. H. R. then and there being in the peace &c. and him the said J. H, R. in bodily fear and danger of his life in the highway aforesaid, then and there did feloni-ously put, and one silver watch of the value &c. of the proper goods &c. from the person and against the will of the said J. II. H. in the highway aforesaid then and there feloniously and violently did steal, take and cany away, against the peace and dignity of the State.” It was contended, that the indictment was insufficient, because, although it charges the putting in fear in the beginning of the indictment, it docs not state
 
 the robbery
 

 
 *250
 
 to have been
 
 by means
 
 of such putting in fear or by-violence. A sufficient answer to this argument is, in the - first place, that the indictment in that respect is according to the ancient precedents, as appears in
 
 Tremain
 
 288, and
 
 Dogherly’s Cr. Cir. Comp.
 
 682. But in truth, the indictment does charge the robbery to have been by those means. It states the putting in fear first, and then proceeds, that the prisoner one watch from the said &c. “ then and there” feloniously and “ violently” did steal. It is clear therefore that by means of the
 
 “ibidem
 
 and
 
 tunc,”
 
 the verdict connects the putting in fear and the stealing together, so as to make the whole one transaction. But, if that were otherwise, it expressly charges a taking in the highway, from the person, and against the will of the owner, “feloniously and violentlyand thus makes violence
 
 the means
 
 of effecting the robbery, which alone is sufficient according to Mr. Blaokstone. He states that it is not necessary, though usual, to lay in the indictment, that the robbery was committed by putting in fear, but that it is sufficient, if it be laid to be done with violence, 4
 
 Bl. 243. The
 
 same appears from
 
 Donatty’s
 
 case, East. C. L. 783. Indeed that results from the definition of robbery, which is a taking by violence,
 
 or
 
 by ^ putting in fear. The indictment would therefore do, if it had been supported by evidence of a robbery
 
 in
 
 the highway, instead of one
 
 near
 
 it.-
 

 Per Curiam. Judgment reversed and
 
 venire de novo,