HAFNER MANUFACTURING COMPANY, Appellant, v. CITY OF ST. LOUIS.

Division One, December 19, 1914.

1. **FORCIBLE ENTRY AND DETAINER: Title.** The rule that in actions of forcible entry and detainer title is not an issue, is to be taken in the sense that title is not tried out as a determinative factor. It does not mean that title is not to be considered for any purpose.

2. ——: ——: **No Exception.** Where no exception was saved to the ruling of the court admitting a deed describing the property in suit in an action of forcible entry and detainer brought against the city which claims the land is a part of a public wharf "on the ground that it is offered solely for the purpose of showing that the property in question is part of the public wharf," it will not be *held* on appeal that error was committed in admitting said deed in evidence. On appeal only exceptions ruled in the trial court are considered.

3. **OBJECTIONS: General.** An objection to proffered evidence that it is incompetent, irrelevant and immaterial is of no sensible use in the administration of justice, and is unavailing as an assignment of error.

4. ——: ——: **Ordinance: Violative of Constitution and Statutes.** An objection to the admission of an ordinance in evidence to the effect that it is violative of the Constitution and laws of the State, without any designation of what provision of the Constitution or what specific law it contravenes, is too general and vague.

5. **FORCIBLE ENTRY AND DETAINER: Title: Circumstances: Judgment in Ejectment.** In forcible entry and detainer, the question of lawful possession and unlawful ouster, and not the title to the land, is the matter for adjudication; but what constitutes possession must depend upon circumstances. The records in an ejectment suit, brought by plaintiff's ancestor against the city, in which it was held that a certain tract of land, of which that in suit is a part, was a public wharf belonging to the city, though said part has never been reduced to actual wharf uses, may be offered in evidence for the purpose of showing the character of possession of the plaintiff in the land in suit, since the purposes for which it has been used has an influence in arriving at common-sense conclusions as to whether or not plaintiff has been in possession. If the judgment record in the ejectment suit is not used as a basis for a finding in the unlawful detainer suit, that is, the case is not made to turn on title, the evidence can do no harm.

6. **PUBLIC WHARF: Is Public Highway.** A public wharf on a navigable stream, connected with public streets and in a sense an extension of such streets, is in the eyes of the law a public highway; and the rights of the city in and its duties towards it are akin to its rights and duties towards its public streets.

7. ——: **Forcible Entry: Removal of Obstruction.** No person has a right to the exclusive use of a tract of land owned and dedicated by the city to public use as a wharf, any more than he has a right to the exclusive use of a public street; and the city has the right, when authorized thereto by its charter

Hafner Mfg. Co. v. St. Louis.

and ordinances, to remove any obstructions to such general public use of the wharf tract placed thereon by one asserting an exclusive use thereto.

8. ———: ———: **Lawfully Possessed.** A complainant in a suit of forcible entry and detainer is bound to make proof that he was lawfully possessed of the premises and that defendant unlawfully entered into and detained the same; and "lawfully possessed" is used in the sense of "peaceable possession." But peaceable possession does not mean possession obtained by force and a strong arm, or in tortious violation of the owner's right, nor does it mean a possession that is a mere sham.

9. ———: ———: ———: **After Suit in Ejectment.** One cannot be said to be in lawful possession of land, after it has been adjudged by a suit in ejectment that his ancestor was not the owner, but that it was a part of a tract belonging to the city and dedicated to public use for wharf purposes, who piled lumber thereon, and then before the city undertook to remove obstructions therefrom and in contemplation thereof removed all his lumber except a few weather-stained boards and some stakes used in piling.

10. ———: ———: **Unlawful Detainer: City.** It cannot be said that a municipal corporation, which, in the exercise of its charter and ordinance right to remove obstructions from public wharfs and streets, removes a few weather-stained plank and piling stakes from a part of a tract of land which has been adjudged by suit in ejectment to belong to it and has by it been dedicated to a public wharf, has thereby "unlawfully entered into and detained" said premises.

11. ———: ———: ———: ———: **Improvement.** Nor is the question of complainant's lawful possession or the city's unlawful entrance affected by the fact that the city had not improved so much of the public wharf as complainant claims, but had improved the balance.

12. ———: ———: **Selling Complainant's Personal Property Thereon.** Nor is the action of forcible entry and detainer to be affected in any wise by the fact that the city in the exercise of its municipal right to remove obstructions from a public wharf, in entering upon the land to remove the obstructions seized certain lumber belonging to complainant and sold it at public auction. Damages on that score cannot be awarded in such a suit.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*E. P. Johnson* and *Richard A. Jones* for appellant.

(1)   The property in suit directly adjoining on the east other property of complainant, was in the peaceable, undisputed and uninterrupted possession of complainant for some six years immediately preceding and up to the time it was dispossessed by defendant. November 21, 1910.   The property is unimproved, neither paved nor in any manner fitted for wharf purposes and used by complainant as a lumber yard.   Defendant has never sought to, or in any manner used the property except, as is to be derived from its evidence, for a period beginning in 1891 and terminating prior to the occupancy by complainant, by leasing to individuals for occupancy and use in the conduct of private business.   Under such conditions, and while complainant was in peaceable and undisturbed possession of this property and had been for a long period of years, by summary action, without judicial process or proceeding and against the protest of complainant, defendant, by its city marshal, dispossessed complainant, and confiscated and sold lumber, the property of complainant, which it found located on such real estate. Such action was without legal authority and in violation of the law of this State.   R. S. 1909, secs. 7655, 7656; Willis v. Stevens, 24 Mo. App. 494.   The action of the city marshal in entering upon and taking possession of such property was directed and claimed to be authorized by the mayor of defendant, acting under ordinance No. 25363 of defendant.   It was in pursuance of demand theretofore made by the law department of the defendant, that complainant "remove from, vacate and surrender possession of that property, and that unless this is done forthwith, proper proceedings will be brought to secure the possession and to assess fines for the occupation of said property."   The money

received from the sale by the defendant, of the lumber on the property, was, after payment of cost of sale, turned into and retained in its city treasury. That the action taken in such regard on the part of defendant constituted a forcible entry and detainer, is clear, and that such character of action may be maintained against a municipal corporation is determined by the authorities. Dooley v. Kansas City, 84 Mo. 444; Edwardsville v. Barnsback, 66 Ill. App. 381; Oklahoma City v. Hill, 4 Okla. 529; Raines v. Oshkosh, 14 Wis. 372. That complainant was in possession of the property at the time defendant entered thereon, and that defendant retained and was in possession at the time suit was brought and thereafter, are facts established without contradiction. Indeed, prior to entry, defendant, through its law department, demanded that complainant remove from said real estate, vacate and surrender possession thereof, and the order of removal afterwards signed by the mayor states: "that the following portion of the public wharf is obstructed, occupied, encroached upon and used by the Hafner Manufacturing Company as a lumber yard." Concerning defendant's possession at the time of filing suit it is alleged in its answer that it was at such time, and for more than fifty years prior thereto, in possession of such property.

*William E. Baird* and *E. P. Griffin* for respondent.

The character of possession claimed by the plaintiff in an action of forcible entry and detainer must be such as would, if uninterrupted, ripen into adverse possession. And, as there can be no adverse possession of public property against a municipality in Missouri, the plaintiff in this case could not, and did not, have any such possession as to support this action. The statutes provide that nothing in any Statute of

Limitations shall extend to any land given, granted, sequestered or appropriated to public use. This has been the law since August 1, 1866; R. S. 1909, sec. 1886; State ex rel. v. Vandalia, 119 Mo. App. 406; Rochester v. Mining Co., 86 Mo. App. 447; St. Louis v. Railroad, 114 Mo. 13; Brown v. Carthage, 128 Mo. 10; Wright v. Doniphan, 69 Mo. 601; Dillon on Municipal Corporations (5 Ed.), secs. 1194, 1189. Not even the acceptance by the city of taxes from one claiming the assessed land by adverse possession will estop the city from asserting its claim thereto. St. Louis v. Gorman, 29 Mo. 593; Wright v. Doniphan, 69 Mo. 601. To the same general effect are the following: Railroad v. Totman, 149 Mo. 660; Columbia v. Bright, 179 Mo. 441; Railroad v. Baker, 183 Mo. 312; State ex rel. v. Road Co., 207 Mo. 85. (2) The public wharf is to be legally regarded as a public highway. This is well established. Backus v. Detroit, 49 Mich. 110; Matter of Brooklyn, 73 N. Y. 179; Woodruff v. Havemeyer, 106 N. Y. 129; Ice Co. v. Railroad, 176 N. Y. 408; Buffalo v. Railroad, 190 N. Y. 84; Steamboat Co. v. Steamboat Co., 109 U. S. 672; 1 Elliott on Roads and Streets (3 Ed.), sec. 1; Eads v. Wooldridge, 27 Mo. 251. (3) Under the statute relating to forcible entry and detainer, this action can be brought only when the plaintiff was lawfully possessed of the premises and the defendant unlawfully entered into same. R. S. 1909, sec. 7668. The so-called possession of the plaintiff in this case is tortious, and not merely constructively, but actually so. Michau v. Walsh, 6 Mo. 346. (4) This action cannot be maintained against the municipality for restitution of possession of public property because there was not and could not be any such entry by the defendant as is requisite to the maintenance of this action. Railroad v. Johnson, 119 U. S. 608; R. S. 1909, secs. 7655 and 7656. The statute is intended to prevent conflicts between individuals over private property, and not the assertion of the public right by public officials over

public property by authority of law. Sitton v. Sapp, 62 Mo. App. 204; Craig v. Donnelly, 28 Mo. App. 342; 19 Cyc., 1117, 1137 and 1138. (5) Lumber piled and maintained by an individual on the highway constitutes a nuisance, and, under the provisions of the St. Louis Charter, the mayor may summarily cause its removal. And the force involved in entering upon such property and removing such nuisance is not such as to constitute the offense of forcible entry, but the action of forcible entry and detainer is intended only to preserve the peace by preventing entry by private individuals on possession of other private individuals where entry is not given by law, and not to prevent entry by public officials on public property by authority of law. The piling of lumber on the public property constituted a nuisance. 2 Dillon, Mun. Corp. (4 Ed.), secs. 660, 680; State v. Campbell, 80 Mo. App. 110; Seibert v. Railroad, 188 Mo. 657; Loth v. Theater Co., 197 Mo. 328; 1 Dillon, Mun. Corp. (4 Ed.), secs. 95, 374, note 3; Charter, art. 3, sec. 26, cl. 6; Compton v. Bridge Co., 62 Tex. 715; Williams v. St. Louis, 120 Mo. 402. (6) Where the purported possession on which the action of forcible entry and detainer is based was obtained for the purpose of imposing on another party the burden of bringing an action of ejectment, as in the present case, then the possession is not such as will support the action of forcible entry and detainer. DeGraw v. Prior, 60 Mo. 56; Underwood v. Caruthersville, 146 Mo. App. 288. (7) While it is true that title is not in issue in a forcible entry and detainer suit, yet deeds or other evidence of title are admissible to show the character, nature or extent of the possession in controversy. Therefore, the wharf deed as well as the city ordinances enacted in 1852 and in 1864, respectively, were competent evidence. They were also competent for the purpose of showing that the property in question was part of the public

wharf of the city of St. Louis.  19 Cyc., 1165; Moore
v. Shoop, 123 Mo. App. 407.

LAMM, J.—Forcible entry and detainer. Plain-
tiff, cast below on a trial to the merits, appeals. Plain-
tiff corporation owned a block of ground on Dock
street abutting on the public wharf in North St. Louis.
On said block was situate its manufacturing plant. If
a certain two of the parallel lines of that block were
produced to the Mississippi River, they include a part
of said wharf. On a part of the land lying between
said lines so produced, plaintiff had for some time piled
lumber for use in its manufacturing business. It seems
this lumber, of the value of, say, $40,000, was piled
there by leave of the Hafner heirs, who, in turn, as
owners of the stock in plaintiff corporation, controlled
the latter.

At a certain time in the late summer and fall of
1910, defendant city, acting through its mayor, its har-
bor and wharf commissioner and its law department,
served notice on plaintiff to remove said lumber—this
by virtue of certain ordinances. On failure of plaintiff
to do so (which happened) the city marshal was or-
dered to remove the same. Thereupon that officer, in
a writing aptly referring by description to the part of
the wharf so obstructed, to the municipal code and
pertinent ordinances, gave plaintiff notice to remove
the lumber piles within ten days, or in default that
he (the marshal) would remove them. It seems this
notice had been preceded by negotiations, for, say, two
months, looking to the clearing away of the alleged ob-
structions and that when the marshal finally served
notice, plaintiff asked to be further notified of the ex-
act day the officer would appear on the scene and began
removing the lumber—this evidently for the purpose
of entering a verbal protest, and thereby laying a sup-
posed foundation for projected litigation. Accordingly
the marshal, by word of mouth, gave plaintiff notice

when he appeared with his men and teams, and then and there plaintiff protested against his contemplated action.

Going back a little, it will do to say that in the prior negotiations between the city officers and plaintiff, the latter asserted "color of title" and the right to possession. Moreover, as the ordinance of the city provided for the seizure and sale of material wrongfully stored on wharf property and constituting an obstruction, plaintiff, having a large amount of lumber in jeopardy, concluded not to put all its eggs in one basket. Accordingly, immediately before the marshal came on the scene to remove the lumber it seized time by the forelock and removed substantially all of any value. It left a few "top boards" and some stakes used in piling, and we get the impression these were left for the very purpose of testing plaintiff's rights without, at the selfsame stroke, putting too much at hazard. The marshal removed the lumber so left and after due notice sold it for the rise of $50 on due advertisement at public auction. One of plaintiff's officers estimated the real value of the lumber so sold at the rise of $300. Having cleared off the wharf, the marshal left the premises vacant and so they are to this day. On the same day the marshal began removing the lumber, or presently and while it was in the course of being removed, plaintiff began this action in forcible entry and detainer before a justice of the peace, alleging it was "lawfully possessed" of the premises, describing them, and that on the 21st day of November, 1910, while it was so "in lawful possession thereof, defendant city forcibly entered into the possession of the premises and forcibly detains possession from plaintiff to its damage," etc., wherefore plaintiff prays "judgment of restitution" and for its damages including the value of the monthly rents and profits, etc.

The cause was taken by *certiorari* to the circuit court, and there defendant filed an answer admitting it was a municipal corporation, denying every other allegation in the complaint and its guilt in the manner and form charged. Defendant then, by affirmative allegations, asserted its charter power to establish, open and regulate public wharfs; that in pursuance of that power, by proper ordinances, it had established such wharfs and was in control and possession of them; that the property described in the complaint was part and parcel of the property established by defendant as a public wharf and of which defendant had had possession for fifty years prior to the suit as part of its said wharf. The answer next went on in detail to set up the power of defendant city to prevent and abate nuisances by ordinances, to remove all obstructions and encumbrances from public property and specially pleaded certain ordinances making persons guilty of a misdemeanor who place upon any wharf any nuisance, encumbrance or impediment, requiring the same to be removed by such parties and providing that if they are not removed within the time designated by a named officer, to-wit, the harbor and wharf commissioner, such parties shall, as said, be guilty of a misdemeanor. Pleading also another ordinance leveled against the occupancy of and encroachment upon or obstruction of public wharfs, and providing for the removal of such obstructions, averring that plaintiff unlawfully placed upon a certain part of defendant's public wharf, to-wit, the premises described in the complaint, obstructions consisting of piles of lumber and thereby creating a nuisance upon such public wharf, to the hindrance and detriment of the public in its use of the same. The answer went on to justify the removal of the lumber by averring that defendant acted in strict compliance with the methods prescribed in the last-mentioned ordinance, number 25363, averring that complainant could not have any lawful right or use of said public wharf

or any lawful possession thereof as against defendant, but that it had, in so obstructing and encumbering said public wharf, become and was a wrongdoer and as such was subject to prosecution and conviction as a misdemeanant.

On pleadings thus outlined, the cause was tried without a jury. Sufficiently more of the record to understandingly dispose of points we deem material, will appear in connection with rulings on such points.

We state questions in our own way.

I. *Of rulings on evidence.*

(a) In making its case, plaintiff introduced a deed dated in 1881 from Branch and Gartside to Joseph Hafner (said Joseph being the ancestor of the Hafner heirs hereinbefore referred to) to the *locus in quo* and other land; and another from one Butler, trustee, to said Hafner, dated in 1879. This latter deed evidenced the foreclosure of a deed of trust given by two persons named Glasgow. It conveyed property (we take to be the block on which plaintiff's plant is situate) described as running to the wharf, together with "all accretions to the same belonging, east thereof," which quoted clause covers the *locus in quo*. These deeds were offered and admitted to show what plaintiff's counsel called at the time "possession" and "color of title," "not the right to this property." Said deeds with plats, notices referred to hereinbefore, and oral evidence relating to the permission given by the Hafner heirs to plaintiff corporation to pile lumber on the premises, and the actual piling of such lumber thereon and the removal of the same—all as hereinbefore set forth—in a nutshell constitute the facts upon which plaintiff relied for recovery. It will be of interest to note, as presently shown, that defendant itself holds under the Glasgows and others.

When defendant came to make its own case, it offered a deed dated in January, 1853, executed by, to-

wit: "Mary L. Tyler, H. F. Christy, Susan Preston Christy, Wm. A. Pendleton, M. A. Pendleton, Thos. H. West, Martha West, William G. Ewing, John Biddle, By Louis G. Picot, his atty. in fact; J. T. Sweringen, M. J. Sweringen, L. A. Benoist, G. W. Goode, Francis S. M. Goode, Wm. H. Glasgow, Mary F. Glasgow, D. D. Mitchel, Martha E. Mitchell, M. N. Taylor, Edwd. C. Wills, Sam'l B. Churchill, Amelia C. Churchill, Orleana C. Schaumburg, Martha A. Willis, Harriet M. Dean, Thos. A. Wright, John R. Shepley, V. Graham, C. Graham, Ch. Chambers, James Chambers, Mary Harney, L. M. Kennett, mayor of the city of St. Louis; William Waddingham, Louis V. Bogy, Jno. Maguire, H. Von Puhl, L. K. Barret, William F. Wright, E. F. Wright, Walker R. Carter, Rebecca A. Carter, Walker R. Carter, executors of H. M. Shreve, deceased; Thomas L. Snead, Harriet V. Snead, Dan'l D. Page."

These grantors describe themselves as owners and part owners of the real estate conveyed; said deed is known as "the dedication deed of 1853." It conveyed to the city of St. Louis the *locus in quo*, together with much other real property, for the purpose of a "public wharf for said city."

We may as well state at this point that this dedication deed, as a foundation of the city's right to its wharf, has been attacked from various angles by some of the granting parties (for instance, the Sweringens) and their descendants, grantees, and subgrantees, but has been uniformly sustained against all attacks as a valid, operative instrument for the wharf purpose blazoned forth therein in the following cases, among others: City of St. Louis v. Wiggins Ferry Co., 88 Mo. Mo. 615; Sweringen v. St. Louis, 151 Mo. 348; Hafner v. St. Louis, 161 Mo. 34; Troll v. City of St. Louis, 257 Mo. 626, and Troll v. City of St. Louis, 257 Mo. 765. These Troll cases in some of their phases involve the same deed of dedication and the same wharf.

The Hafner-case, supra, was ejectment for the land involved here. In that case the plaintiffs were the very heirs of Hafner under whom plaintiff corporation now claims a permissive license to pile lumber, and therein the city filed an equitable answer. The issues being found for the city in that case, the plaintiff in the instant case confronts the proposition of *res adjudicata,* despite the fact the form of the former action was ejectment. [Preston v. Rickets, 91 Mo. 320.]

When defendant offered its said dedication deed the record shows as follows:

"Objected to by complainant as incompetent and immaterial and on the ground that the grantors had no title to the premises in suit and title is not an issue in this case.

"The Court: The objection is overruled on the ground that it is offered, as I understand it, solely for the purpose of showing that the property in question is part of the public wharf."

It will be observed no exception was taken to this ruling.

A main part of plaintiff's brief is devoted to discussing the general rule of law that in actions under the forcible-entry-and-detainer statute title is not an issue. That generalization must be taken in the sense that title is not tried out as a determinative factor, and with the observation that it, like other general rules, has its modifications made necessary to meet the full ends of justice in each case. Reference thereto will be made presently. Plaintiff complains of the ruling admitting said deed. For present purposes it is sufficient to say that on the record quoted, supra, as said, no exception was saved to the ruling of the court on the objection; hence the trite doctrine applies that no assignment of error can be predicated on appeal of such objection. On appeal only exceptions ruled below concern us. [R. S. 1909, sec. 2081.] Accordingly the point falls out of the case, and is disallowed to plaintiff. This

ruling is somewhat technical, but is softened to us for that plaintiff itself read its own deeds into the record and should not blow hot and blow cold on the same proposition. [Stumpe v. Kopp, 201 Mo. l. c. 418-9.]

(b) Complaint is made that the court permitted defendant city, over plaintiff's objection, to introduce ordinances relating to establishing wharfs, etc., to-wit, ordinance No. 2932 and ordinance No. 5403. It will not be necessary to set them forth further than to say they looked to the improvement of the wharfs so established and under them the one in question was improved in part and used as a wharf.

To the offer of those ordinances, the record shows the following stock objection: "Objected to by complainant as *in*competent, *ir*relevant and *im*material." We think the time has come when for the convenience of apt designation this stereotyped objection may, without lowering the dignity of our case, be termed the *3-i's*. On a similar ground we may say these *"i's,"* like the mere germinating eyes of the potato, see not, and are of little or no sensible use in the administration of justice. We have been so lately over the philosophy of the matter in State ex rel. v. Diemer, 255 Mo. l. c. 346 et seq., that new exposition is excessive exposition. We can add nothing worth while to what is said in that case. Whenever called on to consider such unreasoned and elusively expansive form of objection this court has taken pains to give reasons why it is generally unavailing as an assignment of error when overruled *nisi*. We disallow the point to plaintiff.

(c) For the purpose of showing the occupancy of the wharf on the part of the city, and the character of its possession, certain of its acts in dealing with what was deemed public property were admitted; for instance, certain leases and a certain ordinance. This evidence was challenged as "irrelevant and immaterial." The exception saved to the court's ruling on

such objection cannot be considered. This for reasons given in paragraph *b,* supra.

(d)   For like reasons the same disposition must be made of exceptions saved by plaintiff to introducing a letter from Harbor and Wharf Commissioner Whyte, of date August 10, 1910, and an order from Acting Mayor Rombauer to the marshal, of date August 1, 1910.

(e)   Defendant offered an ordinance, No. 25653, and an exception was saved to overruling an objection to the same. We copy enough of the record to show the scope of the objection, thus:

"Objected to by complainant as incompetent, irrelevant and immaterial.

"The Court: Your objection goes to the validity of all the proceedings by the city, as I understand you?

"Complainant's Counsel: It is in contravention of all the laws of the State and therefore void. In contravention of the law that no person shall enter upon the land of another; and this property is real estate. We further object on the ground that the ordinance is unconstitutional, because it is forbidden by the Constitution to enact a law except in pursuance of the Constitution, and laws of the State."

Attending to that record, we observe: The first ground of objection has been already ruled upon. The last is of no efficacy because it is too general and vague. In appealing to the Constitution and laws to persuade a ruling on the admission of evidence, it will not do to make a wholesale appeal to the whole body of the Constitution and the whole body of the law. [*Vide, arguendo,* Bragg v. Met. St. Ry. Co., 192 Mo. l. c. 345.] But counsel must put their finger on the specific provision of the Constitution and the specific law that is violated by the ordinance objected to. We have uniformly ruled as indicated in refusing to take cognizance of constitutional points thus vaguely outlined below in

general objections to evidence and in motions for new trials, and on questions of jurisdiction. The objection, to be of practical use, should be certain and specific.

(f)   Defendant offered in evidence the files and record of the case of Hafner et al. v. St. Louis. (*Nota bene*: This was the ejectment suit tried in the circuit court of St. Louis on an equitable answer, decided against those persons under whom the present plaintiff claims a permissive right, and affirmed here on appeal as hereinbefore set forth.)   There are grounds of objection to the introduction of these files and records we have already disposed of.   Pretermitting those, we come to the following additional ground:   ''Further objected to on the ground that this is a forcible entry and detainer suit, and the defendant now seeks to raise an inquiry as to the title—to go into the question of title—and seeks to establish title by this offer.''

Attending to that objection, we say this:   It was admitted in open court that the deed of dedication (the 1853 deed) placed the property in dispute within the land descriptions of that deed and fixed the western boundary of the wharf along the west line of said property.   There is undisputed evidence that the city for two generations or so had possession—a possession it held against hostile attacks from any quarter, as indicated in cases cited, supra.   So, the instant case runs on the undisputed record that while the city had not improved the entire wharf tract as a wharf, yet it had improved (and for half a century used) a public wharf running longitudinally along its eastern part next to the Mississippi River, leaving a ribbon of it on the west unimproved as yet.   The record carries abundant proof of the further fact that the trial court time after time disavowed any intention to try the question of title between plaintiff and defendant, as title, but admitted the dedication deed, ordinances, various leases, and acts of the city (not on the question of title, but) to characterize the city's possession as that of a public

wharf for the benefit of all persons needing one for shipping by water. Now, "What will constitute a possession must depend on circumstances." [Eads v. Wooldridge, 27 Mo. 1. c. 254.] "The purposes," says Scott, J., in that case, "for which a tenement is used has its influence in ascertaining the acts and conduct which will determine whether or not there is a possession of it." The proof tendered here constituted, when properly limited, the "circumstances." Accordingly, when the above objection was made to the files and record in the Hafner ejectment case, defendant at once limited the object of its offer of evidence in a way to subserve a proper purpose and to exclude it as a tender on an issue of title, as title, thus:

"Defendant's Counsel: The files in this case are offered for the purpose of showing that the dedication deed offered in evidence by the city and the two deeds offered by the plaintiff were passed upon and construed by the Supreme Court; for the purpose of showing the character of the possession of the plaintiff of the land in suit."

On that limited offer the court overruled the objection, and we think rightly so. We will recur to the subject-matter of "title" under another head presently; for the present we will say this: It would seem an essential prerequisite in doing justice between plaintiff and defendant from a standpoint of common sense to first ascertain whether the *locus in quo* was a part of the public wharf, the public commons of the city for wharfage purposes. It would be quite out of the question to deal intelligently with the matter if that fact were left dark. There is no indication in the case that the court used the evidence for an alleged improper purpose, to-wit, by making it the basis of an improper finding; for instance, to make the case turn only on title. The evidence did plaintiff no harm, as we see it, hence the point is disallowed.

Material complaints relating to errors in the introduction of evidence having been sufficiently disposed of, we confront a group of questions, given by us a composite head, thus:

II.  *Of the merits (and herein of the instructions).*

(a)  It may be taken as acceptable doctrine that a public wharf on a navigable stream connected, as here, with public streets and in a sense an extension of such streets, is in the eye of the law a public highway. Its character is similar. The right to the common use of it in the public is similar, and in a very just sense, the right of the city in and its duty toward it are akin to its rights and duties toward its public streets. The authorities cited by respondent's counsel broadly sustain these propositions.

In this view of it, it becomes important to notice that this corporate plaintiff by this suit does not assert a right to use the public wharf tract as other citizens are entitled to use it, to-wit, for purposes of commercial traffic. *Contra,* it asserts a dominant and preclusive use to part of it. It brings a suit not to assert the right to a common public use, but for the purpose of being put back into an exclusive possession of the *locus in quo.* It stands, then, in the same predicament as an individual would be in who desired the aid of the law to put him back in control and possession of an appreciable part of a public street—a claim inviting jealous scrutiny on its very face.

If in analyzing and defining the term "law" from one angle, Mr. Justice HOLMES was correct in saying it was "a statement of the circumstances in which the public force will be brought to bear on men through the courts,"—we say if that be correct, then the application of force through the courts to put plaintiff into exclusive possession of a part and parcel of a tract dedicated to a public wharf should be judicially eyed askance or, better still, well looked to in advance.

(b)   Something is said, *arguendo,* to the effect
that the city, while it improved part of the dedicated
wharf tract, did not improve the part in dispute; hence
by that token some virtue goes out of defendant's case,
while an increment of virtue is (by the same token)
added to plaintiff's; but it is not worth while to cite
authorities to sustain the proposition that defendant
city has legislative and ministerial discretions in the
particular of wharf improvement.   It is not obliged to
improve the whole tract in any given period of time,
whether such improvement be necessary or not, and
whether it have present financial ability to make such
improvement or not.   The improvement or nonim-
provement of the wharf is, then, no concern of plain-
tiff in this suit, and the fact neither adds to nor sub-
tracts from its rights an iota.   Therefore, the case
should not be allowed to turn on that inconsequent
feature.

(c)   Ordinance No. 25365, read into the case by de-
fendant, is too long to copy here.   The substance of the
material part of it, in small compass, was to provide
a workable and common-sense plan for clearing away
obstructions on wharfs by compelling guilty parties to
remove them, making them guilty of misdemeanors
and providing a scheme for summary removal in case
such parties fail to act on notice given.   As pointed out
heretofore, the city removed the lumber culls and sold
them under the provisions of that ordinance.   Some-
thing is said, as we get the run of the argument, to
the effect that such disposition of plaintiff's lumber
was illegal, and not in accord with due process of law,
etc.   As to that we say, we have not overlooked the
abundant caution whereby plaintiff left enough of the
refuse or weather-stained lumber on the ground to
mark the point and spot with a pin prick, as it were,
so as to save its supposed future rights in contem-
plated litigation.   But that caution must go unre-
warded in this case for two reasons, thus:

In the first place, this is not a suit to test out the right to take possession of and sell plaintiff's lumber. No damages on that score are either asked or could be awarded on forcible entry and detainer. If, therefore, plaintiff has a right of action for damages for wrongful conversion of its lumber (on which we say nothing one way or the other) its remedy lies down another road.

In the next place, the instant case does not justify a discussion of the established doctrine of the law allowing municipal corporations to abate nuisances and requiring officials charged with the duty of removing obstructions on wharfs and in public streets to perform that duty. A city would be in hard lines indeed were it to stand to be mulcted in damages to individuals for negligence in that behalf, on one hand, and disarmed of the power to prevent the occurrence of such damages by removing obstructions, on the other. Assuming for the purpose of the case that the *locus* was a public wharf and that the right to remove obstructions, wrongfully there, is akin to the right to remove them from public streets, then the following pronouncement of the Supreme Court of Texas in Compton v. Waco Bridge Co., 62 Tex. 715, asserts sensible doctrine:

"To force the municipal authorities to a suit in the courts to secure the removal of obstructions from the streets, would, to a considerable extent, defeat the objects and purposes contemplated in the creation of municipal governments."

(d) It is argued for appellant that the case was tried throughout on an erroneous theory, to-wit, on the theory of trying title as if it were a case in ejectment, this in the teeth of the statute forbidding an inquiry into the "merits of the title" (R. S. 1909, sec. 7677), but permitting "evidence for proof of rights under derivative titles, provided for by this article," the forcible entry and unlawful detainer statute. [R. S. 1909, sec. 7690.]

In ruling propositions advanced, another statute must not be lost sight of, to-wit, section 7668, *ibid*. That section contemplated that a complainant under the forcible entry statute is bound to make proof "that he was *lawfully* possessed of the premises," and that "the defendant *unlawfully* entered into and detained" the same. It may be conceded that the words "lawfully possessed" are used in a restrictive sense, to-wit, in the sense of meaning *peaceable* possession. [Krevet v. Meyer, 24 Mo. l. c. 110; Beeler v. Cardwell, 29 Mo. l. c. 74; Michau v. Walsh, 6 Mo. l. c. 350.] But there is still left to be sharply reckoned with, the word "peaceable." That word is a broad and flexible one in meaning and takes on color from the facts. Does it mean, for example, that if I return to my home in the nighttime after a temporary absence and find a burglar or other trespasser in what he chooses to call complete and quiet possession that *his* possession is peaceable and that I am forced to an action of ejectment to get in? Suppose B, the domestic servant of A, locks the outside door on A of a night, must A go to law about it? In other words, is a *tortious* possession a "peaceable" one within the purview of that section? Take another inquiry step. The gist of the action being an illegal use of force by defendant in making its entry on the premises, and the object of the statute being to keep the peace and keep persons from taking the law into their own hands, can a municipal corporation in the exercise of its charter and ordinance right to remove obstructions from public wharfs and streets and thereby abate nuisances, be brought within the purview of the statute in so doing?

It is not amiss to remind ourselves again that defendant did not remove plaintiff from the premises in so far as plaintiff was claiming a right common to all citizens under proper regulation to use a public wharf. To the contrary, plaintiff was left to share in the com-

mon joint use in the wharf as a wharf.  All defendant did was to assert the public use and to remove impediments and obstructions standing in the way of that use.   We are unable to see that what defendant did was calculated to break the peace, or was any illegal show of force, or that it detains the property unlawfully as against plaintiff.

The premises all in mind, we are of opinion appellant's contention that the court made the case turn on mere *title* is not well made.  This because:

(1)  In the first place, the court in instructions as well as in rulings on the admission of evidence sedulously guarded itself against doing the very thing appellant now charges it did.   We will not swell this opinion by  recapitulating those rulings  already set forth which, we think, unerringly indicate the trial theory, and a correct one.

(2)  In the next place, on the facts of this record plaintiff did not make out its case on the issue of being "lawfully possessed."   Observe, defendant's possession of the tract as a public wharf was fortified by a solemn adjudication of this court to that effect and against the heirs of Hafner, who subsequently created plaintiff corporation and then licensed it to pile lumber on the city's wharf ground.   Take a case:  Suppose plaintiff in spite of the cited judgment in ejectment, rendered on an equitable answer, had taken possession of part of the wharf by force and arms after mandate went down settling the matter for all time, would that act constitute a lawful entry to result in lawful possession?  If not, is the act of inching over surreptitiously or furtively and unknown to the owner and without any show of force on a small unused part of a great public wharf a fact constituting a lawful entry to result in lawful possession under the definitions of lawful possession already announced?   I trow not.   [*Vide* cases supra, and an interesting discussion by our Brother WILLIAMS in Abeles v. Pillman, 261 Mo.

359.] To so hold would be the same as saying that the fox, who takes his prey secretly by adroit cunning and indirection when the farmer is not by or looking, is entitled to more respect than the hungry lion, who takes his in open day by use of sheer might, main, tooth and claw, and terror, unafraid of the face of man.

Speaking guardedly and strictly to the facts of this record, we are of opinion that such a tortious possession as we have here is not the kind of possession protected by the statute of forcible entry and detainer. The possession must be something more than a sham. At an early day Judge NAPTON in Michau v. Walsh, supra, made the following apposite observations:

"I take it that nothing more is meant by the term lawful, in this section, than peaceable or quiet possession, contradistinguished from possession which is not merely constructively tortious, but actually so. Such, I think, would be the character of the possession of the man, who, in my temporary absence, should get possession of my house. It would be tortious, and, on my return, I might eject him, without subjecting myself to an action of forcible entry and detainer."

Moreover, it seems to us that the show of force in the instant case by the city in removing the lumber obstructing the public wharf was not the kind of violence and force coming within the purview of the statute and the mischief denounced. Attend to that view of it. In Iron Mountain & Helena R. R. v. Johnson, 119 U. S. l. c. 611, the philosophy of the matter is thus set forth by Mr. Justice MILLER:

"The general purpose of these statutes is, that, not regarding the actual condition of the title to the property, where any person is in the peaceable and quiet possession of it, he shall not be turned out by the strong hand, by force, by violence, or by terror. The party so using force and acquiring possession may have the superior title or may have the better right to the present possession, but the policy of the law in this

class of cases is to prevent disturbances of the public peace, to forbid any person righting himself in a case of that kind by his own hand and by violence, and to require that the party who has in this manner obtained possession shall restore it to the party from whom it has been so obtained; and, then, when the parties are in *statu quo,* or in the same position as they were before the use of violence, the party out of possession must resort to legal means to obtain his possession, as he should have done in the first instance. This is the philosophy which lies at the foundation of all these actions of forcible entry and detainer.''

Speaking to the question of force, a standard work puts the matter in this form (19 Cyc. 1117): ''The force involved in the offense of forcible entry is private force unlawfully exerted, and the public force of the State lawfully exercised cannot be the means of a wrongful entry.''

We take care to say that we shall not hold that a municipal corporation, under any circumstances to be put or imagined, could not be guilty of forcible entry and detainer; but, under the circumstances disclosed by this record, we have no hesitancy in holding that the proposition quoted from Cyc., supra, is a sound and applicable one.

Furthermore, in this connection it is well to bear in mind (not as a controlling but as an illuminating fact) that no possession by plaintiff of the public wharf, however long continued, could ripen into title under the Statute of Limitations. Section 1886, Revised Statutes 1909, reads:

''Nothing contained in any Statute of Limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this State.''

We have held that statute under recent exposition. [Dudley v. Clark, 255 Mo. l. c. 583 et seq.] That case may be consulted by those possessed of prying

minds.  We leave the matter with the remark that to hold plaintiff's possession, not only taken in the teeth of our judgment, but taken under circumstances that could never create title, a sham possession, cannot be out of the way.

(e) It will not be necessary to reproduce instructions.  Appellant assigns error in the giving of two for respondent, but an examination shows them to be drawn on theories of the law announced as correct in this opinion.  Such being the case, there is nothing else to do except affirm the judgment.  Accordingly, let that be done.  It is so ordered.  All concur, *Bond, J.*, in result.