what rights, if any, the defendant had; and, the judgment rendered having determined such rights, the plaintiffs were entitled to have the judgment conform to the provision of the Code cited.

The judgment appealed from, therefore, should be modified as indicated in this opinion, and, as thus modified, affirmed, without costs to either party.

O'BRIEN, INGRAHAM, and HATCH, JJ., concur.

VAN BRUNT, P. J. I dissent. I think the judgment should be affirmed.

---

(85 App. Div. 530.)

### KNICKERBOCKER ICE CO. v. MAYOR, ETC., OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. MUNICIPAL GRANTS—WATER LOTS—RESERVATIONS—PROPOSED STREETS.

 The city of New York conveyed in 1850 certain water lots in the Hudson river, bounded on the north by the center line of Forty-Third street, on the east by high-water mark, on the south by the center line of Forty-Second street, and on the west by Thirteenth avenue, "the permanent exterior line of said city," excepting so much of Twelfth and Thirteenth avenues and Forty-Second and Forty-Third streets, as shown by maps annexed, as came within the boundaries. Held, that no title passed by virtue of the deeds to the streets laid down on the maps, or to the land over which they would pass when extended, as indicated thereon.

2. SAME—DEDICATION OF STREETS.

 The exception and reference to the maps had the effect of designating the land covered thereby as dedicated to the use of the public.

3. SAME—RIGHT OF PUBLIC TO USE PIER AS STREET.

 The covenants contained in the deeds required the grantee, on being requested by the city, to build five good and sufficient bulkheads, wharves, streets, or avenues, which should form so much of Forty-Second and Forty-Third streets and Twelfth and Thirteenth avenues as should fall within the limits described, and to forever keep the same in repair, and that said streets and wharves should always remain public streets, etc. At the time Forty-Second and Forty-Third streets extended to the high-water line of the river. In 1852 the grantee constructed a pier lying wholly within the lines of Forty-Third street as extended. The approaches were made by the continuation of the street as laid down on the map to the bulkhead line, and further continuation of the same was made by the construction of the pier. Held that, the moment such construction was made, the rights of the public to use the pier for a street attached, even assuming that the mere laying out of the streets on the map did not operate to vest any rights in the public therein.

4. SAME—SUBSEQUENT DEED OF PIER—EFFECT.

 A subsequent deed, conveying the pier itself to the grantee, did not operate to destroy the force and effect of the covenants in the deeds of 1850, by which the streets appearing on the map were to be kept and maintained as public streets.

5. SAME—VALIDITY OF DEED CONVEYING PIER.

 If the deed conveying the pier purported to convey title to it in fee-simple absolute, relieved from the covenants as to streets contained in the deeds of 1850, it would be void as against the rights of the public.

6. SAME—ESTOPPEL TO ASSERT INCREASED RIGHTS IN PIER.
    The grantee and his assigns, having entered into possession of the
    pier under qualified grants and subject to express covenants, were es-
    topped from afterwards asserting any greater claim.

7. INVASION OF RIGHTS—REMEDY AT LAW.
    If the city afterwards took possession of the pier for a public use,
    the grantee or his assigns would have a remedy by action at law to
    recover the value of any rights, either of property or otherwise, lost by
    its invasion, and would not be entitled to an injunction.

Appeal from Special Term, New York County.

Action by the Knickerbocker Ice Company against the Forty-Sec-
ond Street & Grand Street Ferry Railroad Company, the mayor, alder-
men and commonalty of the city of New York, and the commissioners
of the dock department. Judgment dismissing the complaint on the
merits (see 78 N. Y. Supp. 838), and plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON,
INGRAHAM, and LAUGHLIN, JJ.

Albert Stickney, for appellant.
James A. Deering, for respondent railroad company.
Theodore Connoly, for other respondents.

HATCH, J. This action was brought to restrain the Forty-Second
Street & Grand Street Ferry Railroad Company, the city of New York,
and all others from constructing a bulkhead at the foot of West Forty-
Third street, in the North river, or across the water lot lying between
Forty-Second and Forty-Third streets, in accordance with the plan
adopted by the department of docks, and approved by the commission-
ers of the sinking fund, under chapter 574, p. 1231, of the Laws of
1871, and the acts amendatory thereof.

There is no question but that the city acquired title to the land in
question through the Dongan and Montgomery charters and various
statutes of the colonial and state Legislatures, enacted thereafter.
Having title to these lands, the city could convey the same in fee to a
purchaser, and he would acquire thereunder an absolute title in fee to
the property conveyed, in the absence of the existence of any public
right. Langdon v. Mayor, etc., 93 N. Y. 129. The plaintiff acquired
its title, through various mesne conveyances, from one Lindsley, who
acquired his title thereto by three separate deeds from the mayor,
aldermen, and commonalty of the city of New York, two of which
deeds were dated in the year 1850 and one in 1852. The two deeds
of 1850 conveyed to said Lindsley all the lands bounded and described
by a line commencing at a point where the center line of Forty-Third
street intersects the high-water mark of the North river; running
thence westerly, along the center line of said Forty-Third street, to
the westerly line of Thirteenth avenue; thence southerly, along the
westerly line of Thirteenth avenue, to a point opposite the center of
Forty-Second street; thence easterly, to and along the center of
Forty-Second street, to the line of high-water mark of the North
river; and thence along the said line of high-water mark to the place
of beginning.

¶ 7. See Injunction, vol. 27, Cent. Dig. § 16.

One of the two deeds of 1850 described that portion of the land above described, lying between the center of Forty-Third street on the north and a line in about the middle of the block lying between Forty-Second and Forty-Third streets on the south; the other one of said two deeds describing that portion of the said first above described premises lying between a line drawn along the center of Forty-Second street on the south and the southern boundary of the Forty-Third street deed on the north.    The exception in each deed of 1850 is substantially the same, viz.:

"Saving and reserving from and out of the hereby granted premises so much thereof as from said map annexed forms part or portions of Twelfth or Thirteenth avenues and Forty-Third street, for the uses and purposes of public streets, avenues, and highways as hereinbefore mentioned."

A map is attached to each deed, and shows the existence of Forty-Second and Forty-Third streets extending to the river at high-water mark; also the existence of Twelfth and Thirteenth avenues and the proposed bulkhead and pier to be erected upon the land covered by the grant.    Each deed also contained the following clauses and covenants:

"And the said parties of the first part, for themselves, their successors and assigns, do covenant and agree to and with the said party of the second part, his heirs and assigns, that he, the said party of the second part, his heirs and assigns, observing, fulfilling, and keeping all and singular the articles, covenants, and agreements herein mentioned and contained on his part to be kept and performed, according to the true intent and meaning of these presents, shall, and lawfully, have and enjoy, take and receive, and hold to his own proper use, all manner of wharfage, cranage, advantages, or emoluments growing or accruing by or from that part of the said exterior line of the said city lying on the westerly side of the hereby granted premises fronting on the Hudson river, with full power to collect and receive the same for his own proper use and benefit, forever, excepting therefrom such wharfage, cranage, advantage, and emoluments to grow or accrue from the westerly end of the bulkhead in front of the entire width of the southerly half part of Forty-Third street [or "the northerly part of Forty-Second street," in the Forty-Second street deed], which shall be, and are hereby, reserved for the said parties of the first part, their successors or assigns, with full power to collect and receive the same for their own proper use and benefit, forever."

It was also covenanted in these two deeds that the second party, his heirs and assigns, would, within three months after being requested by the first party, build at his own proper cost and expense, according to any resolution or ordinance of the first party, heretofore or hereafter passed, five good and sufficient bulkheads, wharves, streets, or avenues, which shall form so much of Forty-Second and Forty-Third streets, and Twelfth and Thirteenth avenues, as shall fall within the limits above described, and will forever keep them in repair, and that said streets and avenues shall always remain public streets, and that the public shall have the same right thereon as upon all other public streets, wharves, and bulkheads of the city; and, in case that default shall be made by the said second party in any of the said covenants upon the part of the party of the second part, then it may be lawful for the party of the first part to carry out such covenants at the cost of the second party, his heirs and assigns.

By the deed of 1852 Lindsley was granted a pier, situate at the foot

of Forty-Third street, in the North river, being about the southern half of the said pier, resting upon a portion of the lands described, as follows:

"Beginning at a point formed by the intersection of the northerly side of Forty-Third street with the easterly line or side of Twelfth avenue; running thence southerly, along the easterly side of Twelfth avenue, to the northerly side of said pier; thence westerly 211 feet 3 inches; thence southerly 40 feet 5 inches; thence easterly 212 feet 2 inches to the easterly side of Twelfth avenue; and thence southerly to a point where the southerly side of Forty-Third street intersects the said Twelfth avenue. * * * Subject to the right of the parties of the first part to order said pier extended into the river at the expense of the said party of the second part, whenever and in whatever way they may see fit, reserving to the party of the first part to extend said pier at the expense of the corporation of the city of New York, or to grant the right to do so to other parties, if the said party of the second part fail or neglect to extend said pier when ordered so to do; in which case the right to wharfage, etc., at the portion of the pier extended, shall belong to the parties at whose expense the extension shall be made."

This grant is claimed to convey title in fee simple to the pier and the land upon which it stands, subject to the rights of the parties of the first part, as above set forth. The pier was afterwards enlarged, and in 1870 the dock commission was created, with power to adopt permanent plans for the city's water front, which was accordingly done by such commission, and a new bulkhead line was established, much farther out into the river. The plaintiff was at such time the owner of the pier at the foot of Forty-Third street. The pier was enlarged many years ago. In later years plaintiff has allowed the pier to fall into decay, become dangerous, and a menace to the public health and safety. In 1898 the city caused a fence to be built in front of the pier as a protection to the people from injury. The board of health has also ordered the slip to be filled. This has not yet been done, but at the time of the trial no vestige of the pier remained. Through various conveyances, the defendant railroad company has become seised of the water lots lying between Forty-Second and Forty-Third streets. In December, 1890, the board of docks directed it to build the bulkhead in front of its water lot. If this were done, it would prevent plaintiff from coming into the slip at the side of the pier as it was then standing. This action was commenced in 1891 for the purpose of restraining the defendant railroad company and all others from building a bulkhead on the new bulkhead line, and thus interfering with plaintiff's right to enjoy the use of its pier as it had theretofore. In 1897 the board of docks adopted a resolution rescinding the resolution of 1890 directing the railroad company to build the bulkhead; but in June, 1899, after the city had directed the city engineer to take possession of the pier and close it up as dangerous, the dock commission directed the engineer in chief to proceed with the building of the sea wall across the water lots at the foot of Forty-Second and Forty-Third streets.

It is the contention of the plaintiff that under its grants it holds title to the pier in question in fee-simple absolute, and that the city has no right to erect a bulkhead that will shut it off from using the pier as it had formerly done, and that it is therefore entitled to the relief sought. The city, on the other hand, contends that under the Lindsley deeds

it has a perfect right to compel the building of the bulkhead line in question, and that the plaintiff took under said grants, knowing that Forty-Second and Forty-Third streets would be extended to Thirteenth avenue, on account of that avenue having been duly laid out upon a map showing the location thereof, and that whatever relief the plaintiff is entitled to should be enforced in an action at law, and not in an action in equity.

It is settled that the reservations contained in the deeds of 1850 had the effect of excepting the lands therein mentioned from the operation of the grant, and no title thereto passed by virtue of these deeds to the streets laid down upon the maps, or to the land over which they would pass, when extended, as indicated thereon.    Such exception and reference to the maps had the effect of designating the land covered thereby as dedicated to the use of the public.    Consolidated Ice Co. v. Mayor, etc., 166 N. Y. 92, 59 N. E. 713, affirming a decision of this court to the same effect 53 App. Div. 263, 65 N. Y. Supp. 912; Whitman v. City of New York (not yet officially reported) 83 N. Y. Supp. 465.    Not only were these streets and avenues laid down upon the maps attached to the deeds of 1850, but they had prior thereto, and in 1811, appeared as existing streets upon a map; and in 1837, pursuant to an act of the Legislature (Laws 1837, p. 166, c. 182), the land embraced within the description contained in these deeds was plotted and laid out upon a map, made by the surveyor mentioned in the act, in connection with the whole territory in that locality, upon which appeared the bulkhead line on Twelfth avenue, the pier, the subject of this controversy, and Forty-Second and Forty-Third streets as extended to the lines of Thirteenth avenue.    These maps, taken in connection with the exception contained in the deed, had the effect of clearly showing that the land upon which the grants operated did not cover the land embraced within the streets and avenues, and same never passed thereunder, but remained and continued to be territory dedicated to the use of a public street, in which the general public had an interest, and the grant in every respect was made subject thereto.

It is claimed by the learned counsel for the appellant that, notwithstanding the language used in the act of 1837, it did not have the effect of establishing the streets, and could not have such effect until proper proceedings had been taken on the part of the city to open the streets, and that until such time the legal situation remained the same as though no streets had been attempted to be laid out.    He relies in support of his contention upon Matter of Military Parade Ground, 60 N. Y. 319, and kindred cases.    It is undoubtedly true that these cases decide that the mere laying out of a street upon a map does not vest title to lands embraced in the proposed streets in the city; nor does it impose any obligation upon the city to continue a proceeding to acquire title to such lands.    Under such circumstances the public acquires no vested right in the street as such, and proceedings for its opening may be discontinued.    These cases, however, have no application to the present situation.    Here the streets laid out upon the map ran to the line of the river at high-water mark.    It was a navigable stream, over the waters of which the public had the right to go for all purposes of commercial use, and the public was invested with

the right to an approach to the water and to navigate thereon. Both the street and the water were public highways leading to a particular point, and alternately the public had the right to use the land to reach the water and to use the water to reach the land. It is clearly shown, in all the charters and acts by which the city of New York acquired title to land under water and laid out streets running to the high-water mark, that it was the intention of the city to acquire, and of the Legislature to grant, this land for the purposes of a highway. The navigable stream could be used for no other purpose, and, in order to be available, approaches by public streets became a necessity of the situation. Under such circumstances the laying out of public streets upon a map, which carried its boundaries to the high-water mark, and the use of the same by the public, established such streets as public highways to the water, and the general public had a vested interest therein. Forty-Second and Forty-Third streets were in actual use as streets to the line of high-water mark at the time when the grant was made to Lindsley.

Aside from this question, and assuming that the appellant is correct in its contention that the mere laying out of these streets upon paper did not operate to vest any right in the general public therein, it nevertheless remains as the fact that Forty-Second and Forty-Third streets at the time of the grant extended as a physical fact to the high-water line of the river, and, under the grants, the land embraced within these streets did not pass, but were excepted therefrom. Such was the condition when Lindsley, the grantee, constructed the pier and its approaches, as it existed in 1852. The grant was made subject to those streets, and the covenants contained in the deeds required the grantee to construct the proposed streets as appearing upon the map, or as should be directed by the public authorities. When the grantee constructed his pier and the approaches thereto, such approaches were made by the continuation of Forty-Second and Forty-Third streets, as laid down upon the map, to the bulkhead line, and further continuation of the same was made by the construction of the pier. It follows, as a necessary result from this state of facts, that this construction was of public streets, as such, and the right of the public therein to use them for all the purposes of a public street attached thereto the moment such construction was made. This right of the public not only attached to the streets so far as they were filled in with earth and extended to the bulkhead line, but the pier likewise, which was projected from such line, became a public highway as a street, subject to the passage and the rights of the public therein, and subject to the right of use by the public as a wharf and highway. People v. Lambier, 5 Denio, 9, 47 Am. Dec. 273; Matter of City of Brooklyn, 73 N. Y. 179; Commissioners of Pilots v. Clark, 33 N. Y. 251; Marshall v. Guion, 11 N. Y. 461; People v. Mallory, 46 How. Prac. 281. It matters not, therefore, what may be the technical rules of law with respect to the proceedings which must be taken and had in order to vest in the general public the right of use of a street as ordinarily laid out; for here the right of public use was clearly vested, both of the water way and of the land. Each was necessary for the complete enjoyment of

the other, and, when a physical way was made to the navigable stream, the rights of the public became vested therein, and could not be thereafter divested, except by due process of law.

This brings us to a construction of the effect of the grant under the deed of 1852. In construction of this deed, I assume for present purposes that by its terms was conveyed, not alone the pier, but the land covered by the pier in fee. It did not by its terms and conditions, however, destroy the force and effect of the covenants which were contained in the deeds of 1850. Those covenants ran with the land and were not wiped out and destroyed by the deed of 1852.

In Knickerbocker Ice Co. v. Forty-Second St., etc., 48 N. Y. Super. Ct. 489, Mr. Justice Freedman construed the grant which the plaintiff obtained by the deed of 1852 in connection with the prior grants, and summed up his views in these words:

"The plaintiff owns the old pier, and whatever fee the city had to the land upon which it stands, and to the strip of four feet between the southerly side of said pier and the southerly line of Forty-Third street as laid out on the map, with a right of way over the water to the south of the last-mentioned line for a reasonable distance, and it also has a lease of the land under water on which the new pier stands. These rights are subject, however (1) to Lindsley's covenants in the deeds of 1850 to build, uphold, and keep in good repair the south half of Forty-Third street and the whole of Twelfth and Thirteenth avenues (so far as described in the deed) as public streets or avenues and highways, forever, hereafter; (2) to the city's right to convert the new pier into a public street; (3) to the city's right of wharfage accruing from the westerly end of the southerly half of Forty-Third street; and (4) to the right of the defendant the Forty-Second & Grand Street Ferry Railroad Company, as grantees of Lindsley, to all wharfage accruing from the bulkhead extending, when constructed pursuant to requirement by the city, along the exterior line of the block from the southerly line of Forty-Third street to the northerly line of Forty-Second street, and necessarily cutting off all access by water to the southerly side of plaintiff's pier. Of course, the filling in of Twelfth and Thirteenth avenues under the direction of the city implies the right to fill in the intermediate space."

We are of opinion that the learned judge correctly defined the respective rights of these parties, so far as he assumed to determine the same. It is clear from this view that the covenants in the deed of 1850, requiring the streets appearing upon the map to be kept and maintained as public streets for the use of the public, survived the deed of 1852, and remained covenants running with the land thereafter. It further appears that such grant was made subject to the direction of the city to keep and maintain the pier, and the city reserved the right to compel the performance of such condition. It also, by virtue of the covenants contained in the deeds of 1850, had the reserved right to compel the building of sufficient bulkheads and wharves which fell within the line of the grants.

It seems evident, therefore, that under the construction of these deeds, assuming that the city conveyed the fee, it was subject to the covenants which ran with the land, under which the streets were to be opened, constructed, kept, and maintained, and bulkheads were required to be constructed as the city might direct, and thus the right of the public in and to this property, and of the city to enforce the covenants, was not destroyed by the deed of 1852, but continued to exist in full force and vigor, and the plaintiff held the property sub-

ject to compliance with these conditions. If the deed should be
otherwise construed, and its legal purport held to convey title in fee-
simple absolute, relieved from the covenants contained in the deeds
of 1850, a sufficient answer to such contention is that it is void as
against the rights of the public, who are entitled to have kept and
maintained as public streets that portion of the property which was
dedicated to the public use. The city holds its title impressed with
such public use, and could not convey title in contravention of the trust,
in the absence of legislative authority so to do. Brooklyn Com'rs
v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70; St. Vincent's Orphan
Asylum v. City of Troy, 76 N. Y. 108, 32 Am. Rep. 286; Kane v. N.
Y. El. R. Co., 125 N. Y. 164, 26 N. E. 278, 11 L. R. A. 640.

Wharves and piers which are continuations of public streets are
held by the city upon the same tenure and impressed with the same
trust. It has no distinct proprietary rights separable from such
trust. Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197. It
follows, therefore, that if the deed of 1852 was intended to operate
in legal effect as fully and completely as the appellant contends, it.
would be void as against the rights of the public in and to these
streets, bulkheads, piers, and wharves. Nor could the plaintiff ac-
quire any title to this property by adverse possession. Burbank v.
Fay, 65 N. Y. 57; Driggs v. Phillips, 103 N. Y. 77, 8 N. E. 514.
There are no facts in the present case out of which the question
of adverse possession can arise. The plaintiff entered into posses-
sion, by itself and its predecessors in title, under qualified grants and
subject to express covenants. It holds thereunder, and its rights
and title are to be measured thereby. Having entered under such
qualified right, it is estopped from now asserting any other claim.
Duryee v. The Mayor, 96 N. Y. 477; St. Vincent's Orphan Asylum
v. City of Troy, supra. It clearly appears from the present record
that the plaintiff abandoned the use of the pier, which now no longer
exists, and the city by affirmative action has insisted upon perform-
ance of the covenants contained in the deeds. These directions the
plaintiff had failed to comply with, and the city, for the protection of
its inhabitants, has been compelled to fence up and protect the place
formerly occupied by the pier. It acted within its clear legal right
in so doing. We are not concerned at the present time with the ques-
tion as to the plaintiff's exact legal rights in the premises, and do
not determine what it is entitled to, if anything. It is clear that,
as the city has assumed by affirmative act upon its part to take pos-
session of this property for a public use, the plaintiff can recover
in an action at law the value of any rights, either of property or other-
wise, for the city's invasion. Williams v. Mayor, 105 N. Y. 419, 11
N. E. 829; Kingsland v. Mayor of New York, 110 N. Y. 569, 18 N.
E. 435. The action in the last case was in equity for an injunction
to restrain the city from appropriating similar property, and by con-
sent the action was tried as one to recover compensation for the
value of plaintiff's rights. And in Langdon v. Mayor, supra, there
was a valid grant of the fee, but the action was for the recovery of
damages at law arising out of interference with the plaintiff's prop-
erty rights. In the present case, the plaintiff will evidently suffer

no irreparable damage by refusing an injunction. There are no rights now existing which cannot be measured in money damages and enforced in an action at law, and such condition existed when the action was brought. The plaintiff should, therefore, be remitted to such remedy.

It follows that the judgment appealed from was correct, and should be affirmed, with costs. All concur.