[Civ. No. 5720. Second Appellate District, Division One.—October 6, 1927.]

PAN-PACIFIC CONSTRUCTION CO. (a Corporation), Petitioner, v. W. F. MEADOWS, as Superintendent, etc., Respondent.

Paul S. Honberger and Collamer A. Bridge for Petitioner.

Arthur M. Ellis for Respondent.

HOUSER, J.—This is a petition for a writ of mandate to be directed to respondent, requiring him in his official capacity as superintendent of streets of the city of Hermosa Beach to pass upon the sufficiency and form of certain bonds tendered to him by the petitioner herein, and also requiring said respondent to execute a certain contract for the improvement and repair of portions of a designated pier and boat landing located within the said city of Hermosa Beach.

In ordinary circumstances, it is unquestioned that the official duty of the respondent would require the performance by him of each of the things included within the demands of the petitioner herein. But in the particular circumstances surrounding the transaction which is the basis of this controversy, it is the contention of respondent that the city of Hermosa Beach was without authority or jurisdiction to order the contemplated work or to execute the contract for its performance, and for that reason it became and is no part of the duty of respondent as such official to comply with said demands of petitioner.

By the record herein it stands as admitted facts that the city of Hermosa Beach is the owner of the Hermosa Beach pier, boat landing, and the lands which they cover; that the pier abuts upon and is a continuation or extension of a street within said city; that an ordinance of intention adopted by the legislative body of said city of Hermosa Beach provided that the "ocean end of . . . the pier be repaired and reinforced by the driving of certain piles; that the present boat-landing be cut loose from the pier, changed and reconstructed—all as shown in the plans and specifications hereinafter referred to . . . ; that all the foregoing work is fully set forth and delineated in plan No. 2453a, on file in the office of the city engineer, to be done under specification No. 78, on file in the office of the city clerk, to which reference is hereby made for a full and detailed description of said proposed work."

Sections 1, 2, and 79a of the "Improvement Act" (Stats. 1911, p. 730, as respectively amended by Stats. 1925, p. 244; Stats. 1923, p. 104, and Stats. 1913, p. 57) authorize the doing of any work which may be deemed necessary to improve the whole or any portion of any street owned by a city of the class of the city of Hermosa Beach.

The solution of the question presented to this court depends primarily upon whether the pier in contemplation of law was a continuation or extension of the street upon which the pier abutted.

It often happens that a street crosses a stream or marshy or overflowed land, and in such case a causeway or bridge (which in no material respect would differ from a pier or a wharf) over such stream or land would constitute a part of the street or highway with which such causeway or bridge connected. The authorities are so numerous to that effect that citation thereof is deemed unnecessary. It is apparent that the test of whether a structure in the nature of a pier is a street depends primarily upon its location with reference to existing and recognized highways, as well as upon the use to which it is put or is adaptable by the general public.

In Gould on Waters, third edition, section 119, it is said: " . . . The question whether a wharf is public or private depends upon the purpose for which it was built, the uses to which it has been applied, the place where located, and

the nature and character of the structure. When a public highway is laid out to navigable waters, its termination is presumed to be a public landing as incident to the highway. . . . '' (Citing authorities.)

In the case of *Hafner Mfg. Co.* v. *City of St. Louis,* 262 Mo. 621 [172 S. W. 28], it is held that a public wharf may be a "public highway." In ruling upon the question the court said in part: "It may be taken as acceptable doctrine that a public wharf on a navigable stream connected, as here, with public streets and in a sense an extension of such streets is in the eye of the law a public highway. Its character is similar. The right to the common use of it in the public is similar, and in a very just sense the rights of the city in and its duty toward it are akin to its rights and duties toward its public streets. . . . ''

Although in *State* v. *Cowan,* 29 N. C. 239, 247 (7 Ired. 187, 193), it was held that (syllabus), "A wharf, simply as such and not being part of a street, is not a public highway," nevertheless in the course of the opinion the following language may be found: "It is possible, the wharf may form part of the street, at its termination; for example, as some are made for ferry landings."

In the case of *City of Buffalo* v. *Delaware, L. & W. R. Co.,* 190 N. Y. 84 [16 L. R. A. (N. S.) 506, 82 N. E. 513], where many authorities are cited, it is held that where a private dock is built on a public street on the shore of navigable waters the dock becomes a part of the street and the public has a right to travel over it.

In the case of *Frater* v. *Baylen Street Wharf Co.,* 57 Fla. 63 [131 Am. St. Rep. 1084, 49 South. 188], it appeared that a street as originally platted abutted on the waters of a bay; that thereafter such street was extended into the bay by means of a wharf or pier constructed of wooden piling and planks, and that as time went by the wharf extension of the street was filled in with earth and stone and thus converted into solid ground. Touching the main point at issue in the case, in part the court said:

"The contention of the plaintiff below is that the whole extension of said Baylen street, from its original terminus at Main street clear out to the end of its present terminus at deep water, is still the wharf of plaintiff, and that it is

entitled to wharfage upon all goods landed upon said extension from the water at any point south of Main street.

"This contention we cannot sustain. The rule of law is well settled that a public street leading to navigable waters would keep even pace with the extension of the land, whether the change in the land be due to natural causes or to the voluntary act of the owner of the land. *Mark* v. *Village of West Troy,* 151 N. Y. 453 [45 N. E. 842]; *Dana* v. *Graddock,* 66 N. H. 593 [32 Atl. 757]; *Hoboken Land & Improvement Co.* v. *Mayor,* 36 N. J. L. 540; *People* v. *Lambier,* 5 Denio (N. Y.), 9 [47 Am. Dec. 273]; *Mayor of Jersey City* v. *Morris Canal & Banking Co.,* 12 N. J. Eq. 547; *Newark Lime & Cement Co.* v. *Mayor of Newark,* 15 N. J. Eq. 64; Gould on Waters, 3d ed., sec. 157."

The case of *Knickerbocker Ice Co.* v. *Mayor etc. of New York,* 85 App. Div. 530 [83 N. Y. Supp. 469], was similar in its facts to the case just cited in that a street which abutted on navigable waters was extended into such waters by means of earthen approaches and a pier. In part the court said:

" . . . When the grantee constructed his pier and the approaches thereto, such approaches were made by the continuation of Forty-Second and Forty-Third streets, as laid down upon the map, to the bulkhead line, and further continuation of the same was made by the construction of the pier. It follows, as a necessary result from this state of facts, that this construction was of public streets, as such, and the right of the public therein to use them for all the purposes of a public street attached thereto the moment such construction was made. The right of the public not only attached to the streets so far as they were filled in with earth and extended to the bulkhead line, but the pier likewise, which was projected from such line, became a public highway as a street, subject to the passage and the rights of the public therein, and subject to the right of use by the public as a wharf and highway." (Citing authorities.)

And so in the case of *Knickerbocker Ice Co.* v. *Forty-second St. etc. Ferry R. Co.,* 176 N. Y. 408 [68 N. E. 864], the following language of the court appears:

" . . . The general public has a right of passage over the places where land highways and navigable waters meet, and, when a wharf or bulkhead is built at the end of a land

highway and into the adjacent waters, the highway is by operation of law extended by the length of, the added structure.'' (Citing cases; see, also, *Gluck* v. *Ridgewood Ice Co.*, 56 Hun, 642 [9 N. Y. Supp. 254, 31 N. Y. St. 99].)

The ruling in the only California authority to which attention has been directed is in keeping with that indicated in those cases to which reference has been had. Where a street as originally laid out or dedicated extended only to the waters of a bay and thereafter the land within the extended lines of such street into the bay was filled, or such space enlarged by accretion, it was held in the case of *Wood* v. *City of San Francisco*, 4 Cal. 190, that after such filling the street continued to the high water. In the course of the opinion the court said:

''It is contended that there was no dedication of the space between Front street and the water line of the city to public uses; and this whole argument is based upon the fact, that on the official map of the city, by which the legislative grant of beach and water lots was made, said street was not carried out to the front line of the city, while California and other principal streets were. To my mind this raised no such presumption. Where a city is laid out with streets running to the water, such streets should be held to continue on to the high water, if the city front is afterwards filled in, or the space enlarged by accretion or otherwise. Any other doctrine would be destructive of the interests of commercial communities.''

Considering the facts in the instant case, the principle of law as announced in the foregoing cases would seem applicable. It should make no difference that, instead of a fill or a mole being constructed, the street was extended by way of a pier. Hence, if, in line with such authorities, the pier in question became a part of the street as thus extended, it would follow that the proposed work came within the provisions of the ''Improvement Act'' of 1911 and the amendments thereto, which authorized the city of Hermosa Beach to make the improvements and repairs to which reference has been had herein.

However, respondent contends that the proceedings leading up to the awarding of the contract for such improvements were fatally defective in that by the resolution of intention adopted by the legislative body of the city of

Hermosa Beach the proposed work was described as the repairing and reinforcing of the pier by the driving of certain piles, and that the boat landing be cut loose from the pier, changed and reconstructed, all as shown in plan No. 2453a, on file in the office of the city engineer, and that such work be done as indicated in specification No. 78, on file in the office of the city clerk, to which reference heretofore has been had herein.

By the resolution of intention it will be noted that it is provided that *all* the foregoing work is *"fully set forth and delineated* in plan No. 2453a,*"* and that said work *is to be done* under specification No. 78. Nothing contained in the resolution of intention indicates that the extent or description of the work is to be shown in any place other than as is "fully set forth" in plan No. 2453a. By referring particularly to the provisions contained in specification No. 78, it may be found that, among other things, the manner generally of laying asphaltic surfaces is indicated; but that neither the resolution of intention nor plan No. 2453a contains either specification, profile, or cross-section for the doing of the work of the laying of any sheet asphalt on the deck of the pier or elsewhere. It, therefore, appears that specification No. 78 includes a description of the manner in which certain work, to wit, the laying of an asphaltic surface, not mentioned in either the resolution of intention or in the plan No. 2453a, may be done. The description in specification No. 78 of the specifications for laying an asphaltic surface bore no relation whatsoever to the work expressly mentioned in the resolution of intention, or as referred to in plan No. 2453a. So far as asphaltic surfaces were concerned, they were entirely foreign to the work proposed to be done, either by the resolution of intention or as "fully set forth and described in plan No. 2453a." Had specification No. 78 contained, among other things, a detailed description of the manner of constructing a ten-story building, with the same propriety could it be claimed that because specification No. 78 provided for the construction of such a building, necessarily the erection of that building became a part of the resolution of intention, as in the instant circumstances to contend that because the manner of the laying of an asphaltic surface is set forth in specification No. 78, the laying of an asphaltic surface became a part of the

resolution of intention. While the specification for the laying of sheet asphalt would have been appropriate had it been called for by the precedent resolution of intention, which included the reference to the plan number, in the circumstances present the description of the manner of laying an asphalt surface was superfluous and unnecessary. It is clear that in case of any conflict it is the resolution of intention which governs in the premises, rather than any work described in the specifications, which is not included in the resolution of intention. The principle is applied in the case of *Bay Rock Co.* v. *Bell*, 133 Cal. 150 [65 Pac. 299], where, among other things, it is held that a resolution of intention, although it sufficiently described the proposed grading and macadamizing of a street and contained a reference to specifications as to proposed culverts, macadamizing, and crosswalks, yet which neither intelligently described nor referred to the specifications for any description of the materials for proposed *curbs and gutters*, could not be rendered valid by any details of construction contained within the specifications; and that the resolution of intention, which provided specifically only that the macadamizing, culverts, and crosswalks should be constructed in accordance with "the special specifications adopted for said work," must be presumed to have intentionally omitted any such direction as to *curbs* and *gutters*.

It is therefore concluded that, so far as is disclosed by the record herein, the proceedings leading up to the awarding of the contract in question were in all respects valid, and that it became and was the duty of respondent as street superintendent of the city of Hermosa Beach to execute said contract and to pass upon the sufficiency and form of the bonds tendered to him by the petitioner herein in connection with the execution of said contract.

Let the writ issue as prayed.

Conrey, P. J., and York, J., concurred.