[Civ. No. 24538. Second Dist., Div. One. Aug. 26, 1960.]

COUNTY OF LOS ANGELES, Appellant, v. SOUTHERN CALIFORNIA GAS COMPANY (a Corporation), Respondent.

170

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Appellant.

T. J. Reynolds, L. T. Rice, Allen L. Cleveland and C. R. Salter for Respondent.

WOOD, P. J.—Since 1917 defendant (or its predecessor) has maintained gas pipelines under and along county highways in unincorporated areas in the county and has paid 2 per cent of its annual gross receipts for the franchises. From 1925 to 1953 defendant (or its predecessor) has maintained gas pipelines on county bridges in unincorporated areas in the county and has paid certain amounts as rental for such use of the bridges. In 1953 defendant paid the bridge charge under protest, asserting in effect that defendant had the right under its highway franchises to use the bridges as a part of the highway without paying a separate charge therefor. This is an action to recover rental for use of the county bridges which support pipelines of defendant. In 1955 the county granted to defendant a pipeline franchise for 50 years, which new franchise superseded the existing franchises and covered the highways in all the unincorporated areas in the county. In a nonjury trial, defendant contended

that the bridges were a part of the highway and that the payment for the highway franchise included payment for the bridges. Judgment was for defendant. Plaintiff appeals.

In the amended complaint there are 45 causes of action, each pertaining to a separate bridge. It was stipulated in writing in the trial court that a decision upon the first and twenty-sixth causes of action would decide all legal questions involved in the other causes of action, and that the allegations of the first and twenty-sixth causes of action of the amended complaint, as further amended by the stipulation, were true except as to the amount of money, if any, which was due from defendant to plaintiff.

The appeal is presented on a clerk's transcript and the stipulation.

In April, 1917, the board of supervisors of the county adopted an ordinance (No. 467) which provided that a predecessor in interest of defendant was granted a franchise to lay and maintain pipelines for the transmission of gas ''under, along and across the public highways, streets, alleys and public places'' in certain designated areas of the county. The ordinance provided that the grantee should pay to the county 2 per cent of the gross annual receipts of grantee from the use, operation or possession of the franchise. The ordinance provided further that the grantee should pay to the county $15 for each mile of pipeline previously constructed by grantee in the area and $15 for each mile thereafter constructed. Thereafter, in 1918 and 1920, the board adopted similar ordinances (Nos. 514 and 430) which provided that a predecessor in interest of defendant was granted additional franchises to lay and maintain pipelines for the transmission of gas in other designated areas of the county.

After the franchises had been granted, and prior to 1953, the defendant, or a predecessor in interest, installed pipelines in the areas referred to in the ordinances.

In 1913, the board of supervisors of the county adopted a resolution which provided, ''that to attach pipelines to bridges the permittee shall pay'' 10 cents a foot a year for any pipeline not over 5 inches in diameter, and 15 cents a foot for any pipeline over 5 inches in diameter. In 1941, the board adopted an ordinance which provided: that before any person uses any bridge for the support of any pipeline, he should obtain a permit to use the bridge for that purpose from the county road commissioner; that the commissioner should not

grant a permit until the board found that a permit might be granted without a detriment to the bridge; and that any permit should provide that payments should be made in advance annually to the county at certain rates, specified in the ordinance, per lineal foot of pipeline directly supported by the bridge. The ordinance provided further that if, under state law, the county might not legally require the payment of any permit rental from any person, such person should nevertheless apply for and obtain a permit, which permit, if granted, should be granted without payment of any permit fee or bridge rental.

After the franchises had been granted, the defendant, or its predecessor, applied for and received permits to install, or attach, or maintain pipelines on various bridges in the areas designated in the franchises. Thereafter defendant installed, attached, and maintained pipelines pursuant to such permits. Some of the bridges were constructed with federal aid under the Federal Highway Act. After 1925, and prior to 1953, defendant, or its predecessor, paid annually to the county, without protest, the amounts payable under the franchises and the amounts payable as rental for use of the bridges.

About May 18, 1953, defendant sent to the county a check for $3,473.68 as payment of the rental for use of the bridges for 1953. Enclosed with the check was a letter in which defendant stated that the payment was made under protest. The grounds of the protest were to the effect that defendant had the right, under its franchises, to use the bridges for support of its pipelines, and therefore the county could not collect an annual rental for such use of the bridges. Defendant paid to the county, annually, the amounts payable for 1953, 1954, and 1955 under the franchises, but did not pay any amount for 1954 or 1955 as rental for use of the bridges.

In August, 1955, the board adopted an ordinance (No. 6765) which provided that defendant was granted a franchise "to lay, construct, erect, install, operate, maintain . . . pipelines under, along, across, over, or upon the highways, ways, and alleys of the" county. Section 6 of that ordinance provided " 'Highway' means any public highway, freeway, street, road, alley, lane, or court or other public easement, or above or below the same . . . in any unincorporated territory of the county." Section 18 provided that defendant should pay to the county 2 per cent of the gross annual receipts of defendant arising from the use, operation or possession of the fran-

chise. Section 21 provided that defendant should pay to the county, annually, $100 for each mile of pipeline installed during the previous year. Section 44 provided that the ordiance superseded all existing franchises held by defendant.

Subsequent to August, 1955, defendant applied for and received permits to install, or attach, or maintain pipelines on other bridges in the county. Thereafter defendant installed, attached, and maintained pipelines on bridges. Defendant continued to pay annually to the county the amounts payable under the franchises, but did not pay any amounts subsequent to 1953 as rental for use of the bridges.

The original complaint is not part of the record. (Counsel for appellant states that the complaint was filed December 31, 1957.) In the amended complaint, which was filed on September 11, 1958, the county seeks to recover rental for the use of the bridges for the years from 1954 to 1958, inclusive.

In its answer defendant alleged that the bridges were a part of the highway, and that defendant had the right, under its franchises, to use the bridges for support of its pipelines; and that the charge for bridge rental, in addition to the charge for the franchise, was in violation of defendant's franchise rights. It was also alleged in the answer that the county was precluded, under the Federal Highway Act, from charging rental for the use of the bridges which were constructed with federal aid under that act.

Under the heading of Conclusions of Law, the trial judge concluded (in part) that the franchises gave defendant a vested right to install its pipelines within the public highways; that the bridges are parts of highways; that the annual payments by defendant for pipelines installed within public highways, including pipelines installed on bridges, gave defendant the right to attach its pipelines to the structure of the bridges; that the pipelines installed on the bridges placed no greater burden on plaintiff nor created any greater hazard to the public than the pipelines in other parts of the highways, and an annual rental could not be charged, under the guise of police power, to the defendant in addition to its annual franchise payment; that the provision of the Federal Highway Act that all highways constructed under the act shall be free from "tolls of all kinds" prohibits plaintiff from requiring rental payments for use of bridges constructed in whole or in part with federal funds.

Appellant (county) argues that the franchises

granted only the right to use "the public easement of travel" and did not grant a right to attach pipelines to improvements, such as bridges, pavement, guard rails, or traffic signs, which are supplied by the county to facilitate travel by vehicles or pedestrians. It argues further that the word "highway," as used in the franchise ordinance, means the easement possessed by the public for travel and does not include the improvements constructed to aid such travel.

Respondent (gas company), argues, as above indicated, that the franchise granting the right to lay and maintain pipelines under, along, and upon "highways" includes the right to attach pipelines to bridges which are a part of the highway. It argues further that since the franchise grants the right to use the highways, and since bridges are portions of the highways, the right to attach pipelines to bridges follows as a power necessary to enable the gas company to accomplish the purposes for which the franchise was granted.

As above stated, the defendant gas company had paid the bridge rental for approximately 28 years before it paid such rental under protest, in 1953, and thereby raised the question whether it was legally required to pay bridge rental. It appears from the briefs herein that the gas company was prompted to pay under protest and raise such question for the reason that in December, 1952, the superior court had rendered a judgment which was to the effect that the telephone company was not required to pay, in addition to its franchise payment, bridge rental for using county bridges to support its telephone lines. The superior judge ruled that a bridge was a part of a highway and that the telephone company, which had a statutory franchise to construct telephone lines along and upon any public highway, in such a manner as not to incommode the public use of the highway, was not required to pay an additional amount as bridge rental.

Respondent refers to section 23 of the Streets and Highways Code, wherein it is stated: "As used in this code, unless the particular provision of the context otherwise requires, 'highway' includes bridges, culverts, curbs, drains, and all other works incidental to highway construction, improvement and maintenance." It is to be noted that said section states that the word "highway" *as used in that code* includes "bridges," etc. That definition of "highway" was in a statutory provision relative to highway construction, improvement, and maintenance. It is apparent that the Legislature intended that

such highway construction, improvement, and maintenance should include bridges. In other words, in the matter of constructing, improving, and maintaining highways, it is apparent that the Legislature intended that such construction, improvement, and maintenance should include bridges. The statutory definition of "highway," as referred to in that statutory provision, does not necessarily apply to the use of the word "highway" as used in the county franchise, which is in effect a contract (as distinguished from a statutory provision). The gas company also refers to cases wherein it is stated in effect that the term "highway" includes bridges. Those cases included *Bettencourt* v. *State of California,* 123 Cal.App.2d 60, 63 [266 P.2d 201, 43 A.L.R.2d 545]; *Southlands Co.* v. *City of San Diego,* 211 Cal. 646, 662 [297 P. 521]; *McNutt* v. *City of Los Angeles,* 187 Cal. 245, 253 [201 P. 592]; *Pan-Pacific Const. Co.* v. *Meadows,* 85 Cal.App. 775, 780 [260 P. 355]. Those cases are distinguishable from the present case in that those cases related to the matter of improving the highway, and it was held that a statute authorizing the improvement of a highway authorized the building of a bridge. Also, the case of *People* v. *Myring,* 144 Cal. 351 [77 P. 975], cited by the gas company, is distinguishable from the present case. In that case the defendant, who had burned a bridge on a public highway, defended on the ground that the bridge was not a public highway. It was held therein that the evidence authorized the jury to find that the bridge had been dedicated as a public highway. The fact that there are statements in cases that a bridge is a part of a highway is not determinative, in the present case, of the meaning of the word "highway" as used by the county and the gas company in their franchises or contracts. ■ " [L]anguage used in any opinion is to be understood in the light of the facts and the issue then before the court." (*Eatwell* v. *Beck,* 41 Cal.2d 128, 136 [257 P.2d 643].) There are, of course, many factual situations wherein a reference to a highway includes reference to a bridge, but that does not mean that a bridge is a part of a highway in the sense that a county franchise granting the right to install and maintain pipelines under, along, and upon county highways includes the right to attach pipelines to bridges. The county franchises involved herein were accepted and acted upon by the gas company (or its predecessor), and they were in effect contracts between the county and the gas company.

■ In 1913, which of course was before the franchises

of 1917 and 1918 and 1920 were granted, the county had adopted a resolution which provided "that to attach pipe lines to bridges" the permittee should pay a certain amount each year for each foot of pipe so attached. In 1941, before the franchise of 1955 was granted, the county adopted a similar ordinance which provided that a permittee using a bridge for support of a pipeline should pay a certain amount each year for each foot of pipeline that was supported by the bridge. The resolution or ordinance relative to bridge rental, which was in existence when each respective franchise was granted, is a significant factor to be considered in interpreting the franchises. The gas company paid the bridge rental for 28 years preceding 1953, when for the first time it raised a question as to whether it was required legally to pay the rental. The fact that the gas company paid the bridge rental for many years, without question or protest, is an indication that it regarded the matter of attaching its pipelines to bridges as a right that was not included in the franchise provision granting the right to use highways. ▇ "[A] construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the courts." (*Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17].) In *Mitau* v. *Roddan*, 149 Cal. 1 [84 P. 145, 6 L.R.A. N.S. 275], it was said at page 14: "It is to be assumed that parties to a contract best know what is meant by its terms, and are least liable to be mistaken as to its intention; that each party is alert to his own interests, . . . and whatever is done by the parties contemporaneously with the execution of the contract is done under its terms as they understood and intended it should be. Parties are far less liable to have been mistaken as to the intention of their contract during the period while harmonious and practical construction reflects that intention, than they are when . . . one of them seeks a construction at variance with the practical construction they have placed upon it. The law, however, recognizes the practical construction of a contract as the best evidence of what was intended by its provisions." In the present case, the provisions of the franchises should be strictly construed against the grantee, gas company. Each of the franchises referred to in the present case contains a provision to the effect the franchise shall be strictly construed against the grantee, and that nothing shall pass thereby

unless it be granted in plain and unambiguous terms. In *Southern California Gas Co.* v. *City of Los Angeles,* 50 Cal.2d 713 [329 P.2d 289], it was said (pp. 719-720): "As a public grant the franchise is to be construed in favor of the public interest." In the present case, as above indicated, the first controversy regarding the bridge rental arose in 1953 when the gas company paid that rental under protest, after having paid bridge rental for 28 years. Two years later, in 1955, while that controversy was still pending and while the 1941 ordinance requiring payment of bridge rental was still effective, the new 1955 franchise was granted by the county and was accepted by the gas company. That said franchise did not settle the pending controversy by providing specifically therein whether or not bridges were to be regarded as a part of the highway. As above shown, that franchise provided, in language which was similar to the language in the prior franchises, that the gas company was granted a franchise to lay, install, and maintain pipelines under, along, and upon the highways. Also in that franchise, the parties thereto undertook to state their definition of "Highway." Their statement was, as follows: " 'Highway' means any public highway, freeway, street, road, alley, lane, or court or other public easement, or above or below the same . . . in any unincorporated territory in the county." In view of the controversy that had been pending for two years, as to whether bridges were to be regarded as a part of the highway, it would have been reasonable to suppose that the parties in stating their definition of "Highway" would have stated specifically whether or not, according to their contract, a bridge was a part of a highway. It is to be noted that their definition of "Highway" includes specific references to several kinds of travelways, such as street, road, alley, etc., but it does not include a specific reference to "bridge." It is true that their definition states that "Highway" means public highway. That part of the definition, however, does not clarify the issue, which had been raised by the gas company, as to whether bridges are a part of the highway, as the word "highway" is used in the franchise. It was the gas company that started the controversy, as to bridge rental, by asserting an interpretation with respect thereto which was contrary to the interpretation it had placed thereon, in practice, over a period of many years. Under such circumstances and in order to avoid further controversy as to bridge rental, especially in view of the provisions in the franchises

that the franchises should be construed strictly against the grantee and that nothing would pass to the grantee thereunder unless it was stated therein in plain and unambiguous language, the gas company (grantee) should have required express language in the new franchise which would have definitely stated whether the gas company had the right to attach its pipelines to bridges without paying bridge rental. The reason for failing to include such a definite statement in the franchise does not appear. In view of the controversy then pending, it is reasonable to conclude that the omission was not inadvertent. It might well be that in negotiating for the new franchise it was deemed expedient, in the interests of obtaining favorable provisions in other respects, to refrain from insisting upon a definite provision as to bridge rental. In any event, the definition of ''Highway,'' as stated in the franchise, does not specifically state that bridges are a part of the highway. Apparently, the grantee preferred to rely upon a general reference to ''Highway'' as being sufficient to indicate impliedly that the parties meant (contrary to their practical construction for many years) that bridges should be regarded as a part of the highway. In support of such contention, the grantee refers to dictionary definitions of ''bridge,'' and to cases and statutes wherein it is said in effect that under certain circumstances a bridge is a part of a highway. As above stated, there are of course many factual situations wherein a reference to a highway includes reference to a bridge. For example, it is clear that statutory provisions with reference to improving and maintaining highways would include the matter of improving and maintaining bridges; and that statutory provisions with reference to regulating traffic on highways would include the matter of regulating traffic on bridges. Such dictionary definitions, statutory provisions, and case declarations are not determinative of the question herein as to whether or not, under the factual situation presented herein, the parties intended that bridges should be regarded as part of the highways. Although a controversy as to bridge rental had been pending two years, the 1955 franchise did not state in plain and unambiguous language that the parties understood that bridges were a part of the highways. When that franchise was granted and accepted the 1941 ordinance requiring bridge rental was effective. For many years the grantee had recognized and complied with the 1941 ordinance by paying bridge rental. According to a provision in the franchise, the franchise

should be construed strictly against the grantee, and nothing should pass to the grantee thereunder unless it be granted in plain and unambiguous terms. Also, according to decisional law, the franchise should be construed strictly against the grantee. In view of such circumstances and the conceded factual situation herein, it should be concluded that bridges were not to be regarded as a part of the highways within the meaning of the word "Highway" as the parties intended to use that word in the 1955 franchise.

Also involved in this case is the bridge rental for two years preceding the granting of the 1955 franchise, that is, the bridge rental for 1954 and 1955 under the prior franchise. The statements made hereinabove relative to the intention of the parties under the 1955 franchise are applicable with respect to the intention of the parties under the prior franchise, excepting therefrom the above statements as to a pending controversy and as to the parties' written definition of "Highway." Section 2618 of the Political Code, which was in effect when the 1917, 1918, and 1920 franchises were granted, provided in part: "In all the counties of this state public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges, laid out or erected as such by the public . . ." The said three franchises (of 1917, 1918, and 1920) authorized the gas company to lay and maintain pipelines "under, along and across the public highways, streets, alleys and public places." It is to be noted that said section 2618 includes the word "bridges" as one of several specified travelways which are referred to in defining "public highways." It is also to be noted that, in the franchises, the places where the grantee may lay and maintain pipelines include "public highways" and certain of the specified travelways referred to in section 2618, but the franchises do not include specific reference to "bridges." Such omission of the word "bridges," from the franchises, indicates that it was not intended that the grantee should have the right to use the bridges. As hereinabove stated, in 1913 (prior to the franchises of 1917, 1918, and 1920) the county adopted a resolution which provided for a charge for attaching pipelines to bridges. The grantee recognized and complied with that resolution for many years by paying the bridge rental. Also, the grantee recognized and complied with the 1941 ordinances for many years by paying bridge rental. In view of such circumstances and the conceded factual situation herein, it should be concluded that bridges were not to

be regarded as a part of the highways within the meaning of the word "highways," as the parties intended to use that word in the prior franchises of 1917, 1918, and 1920.

Respondent (gas company) also argues that some of the bridges were constructed in whole or in part with federal funds, and therefore, under the provision of the Federal Highway Act that all highways constructed under that act shall be free from "tolls of all kinds," the county is prohibited from requiring rental payments for such bridges. Three of the bridges referred to herein were constructed with federal aid pursuant to said act. Section 301 of the Federal Highway Act (23 U.S.C. § 301) provides: "Except as provided in Section 129 of this title with respect to certain toll bridges and toll tunnels, all highways constructed under the provisions of this title shall be free from tolls of all kinds." In *City of Madera* v. *Black,* 181 Cal. 306 [184 P. 397], the city owned and operated a sewer, and imposed a monthly sewage charge which, by ordinance, was payable as a debt. The defendant therein asserted that jurisdiction of the cause was in the recorder's court; and the plaintiff asserted that the superior court had jurisdiction because the charge should be classified as a tax, impost, or toll. On appeal therein it was held, in accordance with plaintiff's contention, that the charge was classified as a tax, impost, or toll. The 2 per cent of gross receipts required by section 6006 of the Public Utilities Code has been referred to as a "toll." (See *County of Tulare* v. *City of Dinuba,* 188 Cal. 664, 670 [206 P. 983].) In *State of Arkansas* ex rel. *Atty. Gen.* v. *Tennessee Gas Transmission Co.,* 121 Fed.Supp. 484, it was held that there was a distinction between a toll which was charged against travellers and a charge of rental for use of a bridge to support pipelines. It was said therein (p. 488) : "But the obvious and fatal difficulty with this argument [of defendants] is that the defendants are not travellers; they are public utility corporations which are employing portions of the bridge as supports for their facilities. The bridge was obviously not constructed for the purpose of providing such supports, although it is adapted thereto. We know of no rule which requires a municipality, a bridge district, or a private toll bridge company in the absence of a statute to allow a public utility free use of a bridge for laying its pipes, erecting its towers, or stringing its lines." It is true that under certain factual situations rental is referred to as a "toll." The Federal Highway Act did not state that rental

charged for use of a bridge to support pipelines was a toll. The question is whether the word "tolls" as used in the act was intended to include rental charged for using a bridge to support such pipelines as those of the defendant. In the present case, the county was not required to allow the defendant to attach its pipelines to the bridges. If defendant's contention herein is sound, that is, that it is entitled to free use of bridges which are constructed with federal aid, then it would seem that the county could not properly charge defendant for a franchise pertaining to a federal aid highway. It is not reasonable to conclude that the Congress intended, by the use of the word "tolls," to create such a consequence. The words "tolls of all kinds," as used in the act, were intended to prevent the charging of tolls by subterfuge. The word "tolls," as used in the act, should be construed as meaning tolls for use of a bridge for pedestrian and vehicular traffic; and the words "of all kinds" (which immediately follow the word "tolls") should be construed as meaning every type of charge which might be made directly or indirectly for use of a bridge for pedestrian and vehicular traffic. The word "tolls," as used in the act, was not intended to include rental charged for using a bridge to support such pipelines as those of the defendant.

In view of the above conclusions, it is not necessary to discuss other contentions on appeal.

The judgment is reversed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied September 20, 1960, and respondent's petition for a hearing by the Supreme Court was denied October 25, 1960. Schauer, J., McComb, J., and White, J., were of the opinion that the petition should be granted.